[No. 35734. *En Banc.* June 1, 1961.]

PHINNEY BAY WATER DISTRICT et al., *Appellants*, v. THE CITY OF BREMERTON, *Respondent.**

*Reported in 362 P. (2d) 358.

Garland & Bishop by Marion Garland, Jr., for appellants.

Roy A. Holland, for respondent.

Orr, J.—The Phinney Bay Water District is situated outside the corporate limits of the city of Bremerton. It formerly owned its water system and supplied water to residents of the district. The electors residing within the district voted to convey its water distributing system to the city of Bremerton. The city, by ordinance, accepted the conveyance and agreed to furnish water to residents of the district. A contract for service was entered into March 19, 1952, which provided, *inter alia*:

"That the City hereby agrees to furnish to the consumers of water in the District, water service as long as the City shall maintain a public water supply and distribution system, or as long as the District shall continue as a duly organized water district under the laws of the State of Washington. Said water service shall be furnished to the consumers through individual meters, which shall be read by employees of the City and bills sent by the City and collections made by the City for and on account of the use of the water as measured through the individual meters.

. . .

"*For a period of three years after the effective date of this contract*, rates for individual water consumers through a five-eighths inch by three-quarter inch meter for eight hundred cubic feet of water or less shall be $2.50 per month, per user. *At the expiration of three years new rates may be negotiated between the parties hereto for individual users*, but in no event shall rates charged to individual users through meter service be greater than that provided

for domestic meter rates outside the City Limits as established by ordinance and collected from other individual users residing outside the limits of said City.

"Except as herein modified or changed, the service of water to the District, the installation of meters and the rates to be charged for service, and all other work or services to be furnished or performed by the City for the District, *shall be subject to the rules and regulations and/or ordinances now in effect or as the same may, from time to time, be amended or enacted,* and where in this agreement no specific mention is made of any particular service or charge, such shall likewise be governed by such rules and regulations and/or ordinances existing or later enacted during the term of this agreement: *Provided, that there shall not be any increase in basic minimum rate for a period of three years from the date of this agreement.*

"Disputes or questions between the parties to this agreement shall be settled by the Commissioners of the District and by the proper elected or appointed officials of the City." (Italics ours.)

The city maintained the same water rate to the users of the water district from 1952 to 1958.

May 29, 1958, the attorney for the water district, having been apprised of a contemplated rate increase to water users residing within and without the corporate limits of Bremerton, wrote to the city commissioners requesting that negotiations be opened between representatives of the water district and the city, in order that rates agreeable to the water district users might be established. The request to establish rates more favorable to the water district users than to other users residing outside the corporate limits of the city was denied.

Thereafter, the city adopted ordinance No. 2288 which established a new schedule of rates for all water users, and provided for other service charge increases. Section 8 of the ordinance provided in part:

"(a)  Meter rates within the City Limits:

| | |
|---|---:|
| 300 cubic feet or less | $1.50 |
| The next 9,700 cubic feet at | .30 |
| The next 10,000 cubic feet at | .25 |
| In excess of 20,000 cubic feet at | .20 |

"(b) Meter rates outside the City Limits:

| | |
|---|---|
| 300 cubic feet or less | $2.00 |
| The next 9,700 cubic feet at | .40 |
| The next 10,000 cubic feet at | .33 |
| In excess of 20,000 cubic feet at | .25" |

The ordinance rate schedule for other services established a differential between users residing within and without the city limits in approximately the same proportion.

The water district and T. F. Drake, a user within the district, commenced this action against the city, contending (1) that the city refused to negotiate and enter into a contract for water rates satisfactory to consumers within the district, (2) that the rates charged are unreasonable and constitute an illegal discrimination, and (3) that the rates are unjustified and confiscatory. The plaintiffs sought injunctive relief against the increases in rates and service charges as established by the ordinance.

The Marine Drive Water District and Howard B. Hostetler, a user within that district, instituted an action against the city of Bremerton involving identical facts. The causes were consolidated for trial to the court. At the close of the plaintiffs' evidence, the court sustained the city's challenge to its sufficiency, and entered identical judgments of dismissal. The Phinney Bay Water District (hereinafter referred to as though it were the sole appellant) and T. F. Drake have appealed.

Appellant's first contention is that political boundaries alone do not justify a differential in the rates between customers who reside within and those beyond the fixed boundary, and that, therefore, Laws of 1959, chapter 90, § 6, p. 533 (RCW 80.40.010), is in contravention of Art. I, § 12, of the state constitution.

In *Faxe v. Grandview*, 48 Wn. (2d) 342, 294 P. (2d) 402 (1956), a case involving similar facts, we held that the ordinance was not discriminatory, if the rates applicable to each class of users were uniform, and defined the aim and purpose of Art. I, § 12, state constitution, as follows [p. 348]:

"The aim and purpose of this constitutional provision is

to secure equality of treatment to all persons without undue favor on the one hand or hostile discrimination on the other. Compliance with this aim and purpose requires that the legislation under examination apply alike to all persons within a class, and reasonable ground must exist for making a distinction between those within and those without a designated class. *State ex rel. Bacich v. Huse,* 187 Wash. 75, 59 P. (2d) 1101."

Laws of 1959, chapter 90, § 6, p. 533 (RCW 80.40.010), provides in part [p. 534]:

" . . . In classifying customers served or service furnished, the city or town governing body may in its discretion consider *any or all* of the following factors: . . . *location* of the various customers within and without the city or town; . . . " (Italics ours.)

The legislature, in enacting this law, recognized the two classes of patrons and authorized the city, in the exercise of its discretion, to consider the "location of the various customers" in its determination of the rates applicable to each class.

■ The rates established by the ordinance are identical for all of the users within each class. When discrimination in the rates charged a particular class is claimed, the burden of proof rests upon the one who asserts it. *Faxe v. Grandview, supra.*

■ Appellant's evidence failed to establish that the class of patrons residing outside the city boundaries could be served by the city as economically as those residing within its corporate limits. Applying the rule announced in the cited case to the facts in the instant case, the rates established by the ordinance were not violative of the aim and purpose of Art. I, § 12, state constitution.

Appellant's second contention is that the city breached its contractual duty with appellant when it established an increase in rates without the approval or consent of the district. We do not agree.

The pertinent parts of the contract, quoted above, imposed only two restrictions upon the city: (1) that for a period of three years after the inception of the contract the rates established therein would remain constant, and

(2) that in no event would users residing within the district be charged more for water than other users residing outside the city limits. The city complied with both of these contractual obligations.

█ Finally, appellant urges that the terms of the contract require negotiations between it and the city at any time a rate increase is proposed, subsequent to the initial three-year period. We do not so construe the contract. It provides that "At the expiration of three years new rates *may* be negotiated between the parties." (Italics ours.) The contract further provides that water or services subsequently furnished to the district by the city "*shall* be subject to . . . ordinances now in effect or as the same may, from time to time, be amended or enacted." (Italics ours.) There was no mandatory contractual obligation to negotiate after three years.

The record supports the court's determination that appellant's evidence failed to establish that the rates charged under ordinance No. 2288 were unreasonable or discriminatory.

Appellant's six assignments of error were consolidated in its brief under the two contentions discussed and decided above, and, for that reason, are not separately determined.

The judgment is affirmed.

ALL CONCUR.