770 P.2d 342

**Barney JUNG; James R. Fiddler; Harry Thurston, d/b/a Harry Thurston's Saddle Shop; Lawrence L. Lake, Plaintiffs/Appellants**

**v.**

**The CITY OF PHOENIX; Terry Goddard, Mayor of the City of Phoenix; Council of the City of Phoenix; William Parks, Duane Pell, Barry Starr, John Nelson, Howard Adams, Ed Korrick, Mary Rose Wilcox, and Calvin Goode, City Council Members; Phoenix Water and Wastewater Department; William E. Korbitz, Director of the Phoenix Water and Wastewater Department; Marvin Andrews, City Manager; City of Phoenix Water System, Defendants/Appellees.**

No. CV–87–0199–PR.

Supreme Court of Arizona,
En Banc.

Jan. 12, 1989.

Friedeman & O'Leary by John Friedeman and Charles L. Eger, Phoenix, for plaintiffs/appellants.

Roderick G. McDougall, Phoenix City Atty. by Jesse W. Sears and Philip M. Haggerty, Asst. City Attys., Phoenix, for defendants/appellees.

Johnson & Shelley by LaMar Shelley, Mesa, for amicus curiae Leage of Arizona Cities and Towns.

Charles G. Ollinger, III, Paradise Valley Atty., Paradise Valley, for amicus curiae Town of Paradise Valley.

HOLOHAN, Justice (Retired).

The plaintiffs, appellants, brought an action under 42 U.S.C. 1983 against the City of Phoenix seeking damages and injunctive relief because of alleged discrimination by the defendant city in charging different water rates for customers residing outside its exterior boundaries. The plaintiffs also sought to maintain the action as a class action upon behalf of all customers of the defendant city similarly affected by the water rates.

The superior court granted the city's motion to dismiss which also mooted the question of maintaining the action as a class action. On appeal, the Court of Appeals reversed the judgment of dismissal and remanded the case to the superior court for further proceedings. *Jung v. City of Phoenix*, 160 Ariz. 35, 770 P.2d 339 (App. 1987). We granted the city's petition for review to clarify the nature of the plaintiffs' remedies in this utility rate litigation.

The essential facts, briefly stated, are that prior to 1985, the City of Phoenix maintained a water rate for nonresidents that was the same as that for residents. In 1985 the City of Phoenix enacted an ordinance which doubled the water rates for those residing outside the geographical boundaries of the city. The plaintiffs challenged the increased water rate, alleging that it constituted unconstitutional discrimination by the City against nonresidents.

## DISCUSSION

■ Although we agree with most of the analysis in the opinion of the Court of Appeals, we believe that the opinion suggests, at least by implication, that the plaintiffs' allegations support a civil rights action under 42 U.S.C. § 1983. We believe that any suggestion that the allegations of the complaint support a civil rights action must be corrected. Not every denial of a right conferred by state law involves a denial of equal protection. *See Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944). The plaintiffs have no constitutional right to receive water at a particular rate. *City of Phoenix v. Kasun*, 54 Ariz. 470, 97 P.2d 210 (1939). The city, in providing water service to nonresidents, is acting in its proprietary capacity and, *absent a statute*, has no duty to provide water to the nonresidents. *Id.* If the city has violated a state statute in its charges for water provided to nonresidents, the plaintiffs' remedy is under state law, not under § 1983 of the Civil Rights Act.

### Nature of the Remedy

Almost fifty years ago this court noted in *Kasun* that the legislature was the body which had the right to regulate the rates charged by a municipal corporation operating a public utility. 54 Ariz. at 474, 97 P.2d at 214. Since *Kasun* the legislature has enacted legislation specifically governing

water service to nonresidents by a municipality.

The relevant statute, A.R.S. § 9–516, prohibits a city from discontinuing water service to nonresidents. The statute provides in part:

> C. A city or town acquiring the facilities of a public service corporation rendering utility service without the boundaries of such city or town, or which renders utility service without its boundaries, *shall not discontinue such service, once established, as long as such city or town owns or controls such utility* . . . .

A.R.S. § 9–516(C).

■ The city argues that neither the cited statute, nor any other for that matter, authorize a court to set municipal water rates. We agree with the city, and the opinion of the Court of Appeals does not indicate disagreement with that position. As the Court of Appeals indicates, the resolution of this case depends upon the proper construction and enforcement of the controlling statute. At the outset we point out that A.R.S. § 9–516(C) speaks in terms of the city *rendering utility service* without its boundaries. The furnishing of utility service by a public service corporation is regulated by the Corporation Commission, and such utility service must be provided at reasonable rates. Although the Corporation Commission has no jurisdiction over municipal charges for utility service, we believe that the implication of reasonable rates for utility service must be read into A.R.S. § 9–516(C). If such a construction is not adopted, a city could charge any rate it wished despite its effect on the nonresidents' need for utility service. The legislature did not intend to place nonresidents of a city in such an impossible situation. The obligation of a city to continue utility service as required by A.R.S. § 9–516(C) necessarily implies that the charges for such services will be at reasonable rates.

Additionally, the requirement that a city charge reasonable rates where a service has been required to be performed by law is a principle recognized by many authorities. *See* McQuillan, *Municipal Corpora-* *tions* § 35.376A. The principle was recognized in *Kasun* when the court stated:

> · Was the service which the City of Phoenix rendered to plaintiffs and those in like situation with them, based upon contract or law? *If it was based upon a legal right regardless of contract, by all the decisions the courts may determine whether the terms on which he obtains this service are reasonable or not.* On the other hand, if his right to receive service is based solely on a voluntary contract with the city, then that contract is subject to review by the courts only in the same manner as any other private contract, and it is not for them to determine whether its provisions are arbitrary, unreasonable or discriminatory. (Emphasis supplied).

*Kasun*, 54 Ariz. at 476, 97 P.2d at 216.

The City does not contend that it does not have a legal duty to continue water service to the nonresidents. The statute at issue clearly mandates such duty. As a consequence of that duty we hold that the city must provide water service at a reasonable rate.

■ The city points out that a standard of reasonableness is not really a standard because it is subject to various interpretations. Application of a reasonableness standard is not a new concept. It has been applied over the years in a number of cases by various courts. Some general principles abstracted from the cases are helpful in providing guidance about what is reasonable. As a general rule a municipally owned waterworks system supplying water outside its corporate limits may charge more for that service than it charges the users who reside within the corporate limits. *See* McQuillan, *Municipal Corporations Extraterritorial Rates* § 35.37(3d ed.); 4 A.L.R.2d 590, 598; 64 Am Jur.2d *Public Utilities* § 120 at 647 (1972); *Pompano Beach v. Oltman*, 389 So.2d 283, petition denied (Fla.) 399 So.2d 1144. "A city's first duty is to its own inhabitants who ordinarily pay for the municipal plant directly or indirectly, and who therefore have a preferred claim to the benefits resulting from public ownership." *Delony v.*

*Rucker,* 302 S.W.2d 287 (1957). The burden of proving the city's rate schedule to be arbitrary and unreasonable rests upon the plaintiffs, for the ordinance is entitled to the presumption of validity that legislative enactments ordinarily receive. A city may "permissibly serve residents at cost and glean a profit from outsiders." *Id.*

■ In all cases, the city must have a reasonable basis for the discrimination in its charges. *Delony v. Rucker,* 302 S.W.2d 287 (1957). Proof that service of nonresidents involves greater expenses is sufficient to show a city acted reasonably in charging high rates for nonresidents. *See id.* at 290, *Collins v. Goshen,* 635 F.2d 954 (2d Cir.1980). The foregoing examples are provided as illustrations, not as limitations, and other factors may also bear upon the question of reasonableness.

■ The city asserts that the construction of A.R.S. § 9–516(C) by the Court of Appeals is flawed because the legislative intent on rates to nonresidents was clarified by A.R.S. § 9–511 as amended by Laws 1986.

The city asserts that the disposition of this case by the Court of Appeals is improper because it violates the clear requirements of A.R.S. § 9–511 as amended by Laws 1986. The cited statute provides:

> If a municipality provides water to another municipality, the rates it charges for the water to the public in the other municipality shall be one of the following:
>
> 1. The same or less than the rates it charges its own residents for water.
>
> 2. The same or less than the rates the other municipality charges its residents for water.
>
> 3. If the other municipality does not provide water, the average rates charged for water to the residents in the other municipality by private water companies.
>
> 4. Rates determined by a contract which is approved by both municipalities and in which such rates are justified by a cost of service study or by

> any other method agreed to by both municipalities.

A.R.S. § 9–511(A).

The city argues that the water rates to be charged the plaintiffs must be based on the new statute. Further, A.R.S. § 9–511(A) sets the standard for the rates to be charged, and the rates are not to be tested by a reasonableness standard. We agree in part with the city's contention. From and after the effective date of A.R.S. § 9–511(A), any of the plaintiffs who reside in a municipality to which the City of Phoenix provides water, the charges for the water will be made in accordance with the above statute. We disagree with the city that the amended statute affects the claims of the plaintiffs for the period before the effective date of the amendment, and we do not conclude that all the named plaintiffs are affected by the amended statute because some of them may receive water service from the city and be residents of an unincorporated area of the county. In summary, the enactment of A.R.S. § 9–511(A) affects the plaintiffs in their claims for damages for any period after the effective date of the amendment, and any injunctive relief which might be granted by the superior court must not conflict with the water rate structure provided in A.R.S. § 9–511(A) for any plaintiffs coming with the class covered by the cited statute.

As noted earlier, the complaint seeks relief under 42 U.S.C. § 1983 for arbitrary and discriminatory water rates charged by the city. The action may not be maintained under 42 U.S.C. § 1983, but the plaintiffs' allegations in the complaint show that they may be entitled to relief under another legal theory, and they should be allowed to amend the complaint to assert a right to reasonable rates under A.R.S. § 9–516. *State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 667 P.2d 1304 (1983). The dismissal of the complaint without leave to amend was error.

The opinion of the Court of Appeals is modified in accordance with the views expressed in this opinion. The judgment of the superior court is reversed, and the case

is remanded to that court for further proceedings consistent with this opinion.

CAMERON, J., concurs.

GORDON, C.J., and MOELLER, J., did not participate in the determination of this matter.

FELDMAN, Vice Chief Justice, concurring.

I concur in the result. The trial court granted a motion to dismiss, essentially holding that it had no jurisdiction. Plaintiffs alleged in the complaint that the city had set rates that were both discriminatory and unreasonable for non-residents of the municipality. Basing its argument on *City of Phoenix v. Kasun*, 54 Ariz. 470, 97 P.2d 210 (1939), the city contends that the rates are solely a matter of contract and that the court cannot make rates. In my view, the argument is incorrect—a great deal of difference exists between judicial ratemaking and judicial review of rates set by the utility.

Basically, I agree with the court of appeals. Given A.R.S. § 9-516(C) and (D), which prevent municipal water utilities from discontinuing service to current subscribers located outside the municipality's boundaries, and the corporation commission from granting certificates of convenience and necessity to any potential water utility competitors, *Kasun*'s contract theory—prohibiting judicial review of rates set by the city—is no longer good law.

Because the city chose to serve the subscribers, because the law prevents discontinuance of such service, and because the city has a virtual monopoly in the provision of services, I believe the city subjects itself to the common law duties of those who provide essential services to others. *Village of Niles v. City of Chicago*, 82 Ill.App. 3d 60, 68, 37 Ill.Dec. 142, 147, 401 N.E.2d 1235, 1240 (1980) (common law of utilities law provides that a "city is subject to the same rules that would apply to a privately owned utility, [ ]including those forbidding unreasonableness and discrimination in utility rates[ ].") (citations omitted); *see generally* E. McQUILLIN, LAW OF MUNICI-PAL CORPORATIONS §§ 34.158, at 403, and 35.37a, at 616 (3d ed. 1986). Thus, the city may be enjoined from setting discriminatory or unreasonable rates. Furthermore, under proper circumstances, the city may be responsible in damages.

I believe that all we need to say here is that the plaintiffs have stated a cause of action, and the judgment of dismissal must be reversed. What theories are applicable, and what relief ought to be granted cannot be decided unless and until the facts are proved in the trial court.