677 A.2d 655

**WEST CAPITAL ASSOCIATES LIMITED PARTNERSHIP**

v.

**CITY OF ANNAPOLIS.**

No. 1562, Sept. Term, 1995.

Court of Special Appeals of Maryland.

June 5, 1996.

William A. Franch (Franch, Jarashow & Howard, P.A., on the brief), Annapolis, for Appellant.

Rignal W. Baldwin, Jr. (Jonathan P. Kagan, Brassel & Baldwin, P.A., and Paul Garvey Goetzke, on the brief), Annapolis, for Appellee.

Argued before WILNER, C.J., and HARRELL and SALMON, JJ.

WILNER, Chief Judge.

This is a dispute between appellant and the City of Annapolis over certain water and sewer fees charged by the City pursuant to an agreement that the parties entered into in 1985. There are two principal issues raised in the appeal: whether the agreement and the ordinances authorizing and ratifying it are valid; and whether the Maryland Tax Court, rather than the Circuit Court for Anne Arundel County, had the primary jurisdiction to resolve the dispute.

## BACKGROUND

Appellant owns property known as 2000 Capital Drive. In 1985, a small part of that property was located within the City of Annapolis; most of it lay just outside the City line. At the time, appellant was planning to construct a plant on the property, to be leased to Capital Gazette Communications, Inc., the publisher of newspapers and other journals in the Annapolis area.

Appellant was desirous of having its property annexed by the City, and in 1994 it was, in fact, annexed, but in 1985 annexation was precluded by language in certain industrial

revenue bonds used to finance the project. The parties discussed various options for supplying water and sewer service to the property, including having appellant construct its own treatment facility, but they decided that it was in their mutual interest to have those services supplied by the City.

The Annapolis City Code authorized the City to provide water and sewer service to customers outside the City limits and set forth the charges for such service. Section 16.08.050 provided that the charge for water service to users outside the City "shall be twice that charged to users within the city" but allowed the City Council, by ordinance, to approve an agreement calling for a rate equal to that charged City residents if the outside user agreed "to make annual payments to the city in amounts equivalent to city real property taxes which would be imposed if the property were in the city." Section 16.16.010 specified that the charges for sewer service to both City and non-City residents would be 122% of the charges for water consumption.

After arms-length negotiations, a Utility Agreement was signed on September 3, 1985, under which the City agreed to provide water and sewer service to the property. Appellant, in turn, agreed to pay (1) the same rate for water and sewer service as is in effect for customers within the City, from time to time, (2) connection charges customarily charged by the City, (3) capital facility charges and assessments customarily charged by the City, and (4) an annual "fee in an amount equal to the real estate taxes that [appellant] would be liable to pay to the City if the Property and improvements contained thereon had been annexed to and were part of the City." This last fee was to end if and when the property was annexed by the City. The agreement called for it to be ratified by an ordinance of the Annapolis City Council.

Six days after the agreement was signed, the Annapolis City Council adopted Ordinance No. 0–65–85 specifically approving "the form and substance of the Utility Agreement, a copy of which is attached hereto and incorporated herein by reference...."

From 1986 through 1992, appellant dutifully paid the fees called for in the Utility Agreement without protest. For the years 1993 and 1994, however, it refused to pay the real estate tax equivalent. Indeed, in August, 1994, it demanded a refund of all such fees it had previously paid, amounting to nearly $175,000, asserting that those charges "are discriminatory and have been illegally and unconstitutionally imposed by the City because there is no reasonable relationship between the amount of the user charge imposed and the cost of providing such services." On October 7, 1994, the City rejected the claim; in the meanwhile, on September 1, 1994, it filed suit in the Circuit Court for Anne Arundel County for breach of contract, to collect the unpaid fees for 1993 and 1994, then aggregating over $86,000.

Upon the City's rejection of the claim for refund, appellant filed a Petition of Appeal with the Maryland Tax Court, contending that, under the City Code, the City was without authority to impose sewer fees on appellant in excess of those charged to City residents and that the excess fees for both water and sewer service were discriminatory and in violation of the First and Fourteenth Amendments to the U.S. Constitution and art. 40 of the Maryland Declaration of Rights. It then filed a motion to dismiss or stay the City's action in circuit court, arguing that primary jurisdiction over the dispute lay with the Tax Court.

The court denied the motion, concluding that, although the Tax Court might have concurrent jurisdiction, the court was the appropriate forum to decide the contractual and Constitutional issues raised by the parties. Appellant then filed a counterclaim for a refund, alleging that the Utility Agreement was an "illegal and unconstitutional arrangement." Cross motions for summary judgment were filed and, after a hearing, the court granted the City's motion and denied that of appellant. Judgment for the $86,000 plus accrued interest was entered. The court reasoned that the City was under no obligation to provide these services to non-City residents, that it acted solely in its proprietary capacity in providing the

services, and that the charges were fixed by contract fairly negotiated between the parties.

## DISCUSSION

### (1) Jurisdiction

The Maryland Tax Court is an administrative unit within the Executive Branch of the State Government created by State statute. *See* Md.Code Tax–General art., § 3–102; *Shell Oil Co. v. Supervisor,* 276 Md. 36, 343 A.2d 521 (1975). Its jurisdiction is conferred and limited by § 3–103(a) of the Tax–General article:

"The Tax Court has jurisdiction to hear appeals from the final decision, final determination, or final order of a property tax assessment appeal board or any other unit of the State government or of a political subdivision of the State that is authorized to make the final decision or determination or issue the final order about any *tax* issue, including:

(1) the valuation, assessment, or classification of property;

(2) the imposition of a *tax;*

(3) the determination of a claim for refund;

(4) the application for an abatement, reduction, or revision of any assessment or *tax;* or

(5) the application for an exemption from any *assessment or tax.*"

(Emphasis added.)

■ Appellant's petition to the Tax Court was purportedly based on Md.Code art. 24, § 9–712(d). Art. 24 of the Code consists of miscellaneous provisions concerning the political subdivisions of the State. Title 9 of that article deals with revenue and taxes; it authorizes various kinds of taxes and provides procedures for their collection and for the resolution of disputes regarding them. Subtitle 7 deals, in particular, with actions to collect taxes. Part III of that subtitle sets forth the procedures for refunds. Unlike the rest of the subtitle, which speaks only of taxes, § 9–710, which introduces

Part III, speaks of a "tax, fee, charge, interest, or penalty." It provides that a claimant who has paid to a county or municipal corporation a "tax, fee, charge, interest, or penalty that is erroneously, illegally, or wrongfully assessed or collected in any manner" may file a claim for refund with the tax collector. Section 9–712 provides for investigation and allowance or disallowance of the claim. Subsection (d) authorizes a person aggrieved by the action of the tax collector to appeal to the Maryland Tax Court.

In fact, the tax collector of Annapolis did not process and reject appellant's claim for refund. The City Attorney rejected the claim on the ground that the water and sewer charges provided for in the Utility Agreement did not constitute a tax, fee, charge, interest, or penalty subject to the provisions of § 9–712, or indeed subject to the jurisdiction of the Tax Court, and that remains the City's position.

■ The City is correct. We are not concerned here with front-foot assessments, but only with charges for the water and sewer service provided to appellant. Water and sewer charges imposed by municipalities are generally not regarded as taxes or fees in the nature of taxes but rather as charges for the sale of a service or commodity. The Court of Appeals so held in *Loan Corporation v. Baltimore*, 175 Md. 676, 3 A.2d 747 (1939). At 681, the Court, speaking of water service, observed:

> "The rates for the service, sometimes referred to as taxes, are literally service charges. They are not taxes, in the ordinary sense of that word . . . but are commonly referred to as rates or rents, although the charge is for a commodity actually consumed . . . ."

*See also In re Gosman Beverage Company*, 163 F.Supp. 810 (D.Md.1958); *Lehigh Valley R. Co. v. Jersey City*, 103 N.J.L. 574, 138 A. 467 (1927), *aff'd*, 104 N.J.L. 437, 140 A. 920 (1928); *Town of Cicero v. Township High School Dist. No. 201*, 299 Ill.App. 237, 20 N.E.2d 114 (1939); *Himebaugh v. City of Canton*, 145 Ohio St. 237, 61 N.E.2d 483 (1945); *Powell v. City of Duluth*, 91 Minn. 53, 97 N.W. 450 (1903); *Collier v. City of*

*Atlanta,* 178 Ga. 575, 173 S.E. 853 (1934); *City of Roanoke v. Fisher,* 193 Va. 651, 70 S.E.2d 274 (1952); *cf. MTA v. Baltimore Co. Revenue Auth.,* 267 Md. 687, 298 A.2d 413 (1973), holding that a bridge toll is not a tax or charge in the nature of a tax.

This is especially true when, as here, (1) the rates, though higher than those charged to City residents, were based either on consumption (of the water) or provision of the service (water and sewer) and did not represent a general exaction applicable to people who did not use the product or service, and (2) the rates were fixed by contract, the ordinance merely ratifying the contract.

Because these charges were not taxes, or even in the nature of taxes, but instead constituted fees charged by the City in its proprietary capacity for the provision of a particular service or commodity, they did not fall within the ambit of art. 24, § 7–912(d) or of Tax–General art., § 3–102. Accordingly, the Tax Court had no jurisdiction to resolve the dispute, much less any primary jurisdiction. The circuit court did not err in exercising its jurisdiction over the City's breach of contract action.

## (2) The Merits

■ Appellant makes a number of attacks on the Utility Agreement it signed and, for six years, implemented without complaint. It contends that the ordinances authorizing the City to charge non-City residents, in addition to the standard water rates, a fee in lieu of real estate taxes, is discriminatory and unconstitutional. Unfurling the First Amendment, it argues that the additional charges represent an unconstitutional taxation of the press and that it was coerced into signing the Utility Agreement. It urges that, having agreed to provide water and sewer service to non-City residents, the City must charge nondiscriminatory rates. None of these arguments, in the context of this case, have even the slightest merit.

■ We begin with the precept that, absent some statute to the contrary, a municipality is not required and cannot be

compelled to provide water or sewer service outside its geographic boundary (*City of Cumberland v. Powles*, 255 Md. 574, 258 A.2d 410 (1969); *Rockville v. Goldberg*, 257 Md. 563, 264 A.2d 113 (1970)), and, when it chooses to do so, it acts in a proprietary, not a governmental, capacity. *Loan Corporation v. Baltimore, supra,* 175 Md. 676, 3 A.2d 747. Except as provided in Md.Code art. 78, §§ 55 and 55B, the rates charged to users outside the boundaries of the municipality for such services are not subject to regulation by the Public Service Commission.[1] Unless otherwise fixed or controlled by law, they are simply a matter of contract.

 It is also well established that, although municipalities may be required to charge rates that are reasonable and not unfairly discriminatory, they may properly discriminate between residents and non-residents and charge higher rates to the latter. McQuillen states the general rule in this regard:

> "The yardstick as to what are reasonable rates to be charged by a municipality to its residents for a supply or service furnished by its own utility is not usually applied to services supplied to those outside the territorial limits of the municipality. Proof that there is a rate differential in favor of the resident users does not establish prima facie that the nonresident rates are unreasonable. Thus, it is the general rule that a municipally owned waterworks supplying water outside its corporate limits may charge more for that service than it charges the users who reside within the corporate limits."

12 McQuillen, *Municipal Corporations,* § 35.37.50. *See also Jung v. City of Phoenix,* 160 Ariz. 38, 770 P.2d 342 (1989); *Barr v. First Taxing District of City of Norwalk,* 151 Conn. 53, 192 A.2d 872 (1963); *Usher v. City of Pittsburg,* 196 Kan. 86, 410 P.2d 419 (1966); *County of Oakland v. City of Detroit,*

---

1. Those sections of the public service commission law allow the Commission, upon application by certain public entities, to fix rates charged to those entities for water or sewage disposal services provided by a county or municipality. Not being one of the public entities enumerated in those statutes, appellant does not fall within their ambit.

*Etc.,* 81 Mich.App. 308, 265 N.W.2d 130 (1978); *Forest City v. City of Oregon,* 569 S.W.2d 330 (Mo.Ct.App.1978); *Heritage Co. v. Village of Massena,* 151 Misc.2d 587, 581 N.Y.S.2d 993 (Sup.1992); *Phinney Bay Water District v. City of Bremerton,* 58 Wash.2d 298, 362 P.2d 358 (1961); Annotation, *Discrimination Between Property Within And That Outside Municipality Or Other Governmental District As To Public Service Or Utility Rates,* 4 A.L.R.2d 595 (1949); Annotation, *Power Of Municipality To Charge Nonresidents Higher Fees Than Residents For Use Of Municipal Facilities,* 57 A.L.R.3d 998 (1974); *cf. Hagerstown v. Public Serv. Comm.,* 217 Md. 101, 141 A.2d 699 (1958).

 As McQuillen and some of the cases point out, nonresidents have no Constitutional right to receive water and sewer service from a municipality, and thus any remedy they may have for the charging of unlawfully discriminatory rates lies under State law. McQuillen, *supra,* § 35.37.50; *also Jung v. City of Phoenix, supra,* 160 Ariz. 38, 770 P.2d 342. It is also the case that rates set for non-residents are presumed to be reasonable (*County of Oakland v. City of Detroit, Etc, supra,* 265 N.W.2d 130), and the burden is on the non-resident plaintiff to prove otherwise. *Phinney Bay Water District v. City of Bremerton, supra,* 58 Wash.2d 298, 362 P.2d 358; *Clay Utility Company v. City of Jacksonville,* 227 So.2d 516, 517 (1969).

Appellant offered no evidence below, beyond the mere fact that the residential rates are lower than the rate contractually fixed for it, to justify a charge that its rate was unreasonable or discriminatory. No evidence was produced to show that the plant and facilities used to provide the water and sewer service are not, in some measure, supported by the general revenues of the City. If, indeed, the ability to provide the service is funded to any extent by such revenues—even to the extent that the municipally owned plant and facilities themselves are not subject to municipal taxation—it would certainly be reasonable for the City to impose, as a surcharge on non-residents, an additional amount in lieu of the taxes that would be paid if the property were subject to the City property tax.

454

Otherwise, the City residents would, in effect, be subsidizing the non-resident user.

■ We turn, then, to the final three arguments made by appellant, none of which will detain us long. The assertion that the rates charged it constitute an unlawful assessment against a newspaper in violation of the First Amendment is palpably absurd. There is not the slightest evidence in this case that the rates charged had anything to do with the fact that appellant intended to lease the property to a publisher or that they would have been a penny less had the property been used for some other purpose. Appellant's attempt to wrap itself in the mantle of *Grosjean v. American Press Co.*, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936) is wholly unwarranted.

Appellant's contention that it was somehow coerced into the 1985 contract is also lacking a basis in fact. No evidence of such coercion was produced. The fact that it paid the contractual rates for six years without protest itself documents the hollowness of the argument.

Lastly, appellant contends that, while the payment in lieu of taxes is at least authorized with respect to water rates by City Code, § 16.08.050, there is no such authorization for sewer service rates, which § 16.16.010 states shall be 122% of the rate for water consumption. Appellant overlooks the later ordinance specifically approving the form and substance of the Utility Agreement.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.