**Gen. 61]** **61**

## LOCAL GOVERNMENT

**ENVIRONMENT – TAXATION – WHETHER MUNICIPALITY MAY USE REVENUES FROM "SYSTEM OF CHARGES" FOR STORMWATER MANAGEMENT PROGRAMS TO CONSTRUCT AND MAINTAIN CURBS – WHETHER THOSE CHARGES MAY BE ASSESSED AGAINST TAX-EXEMPT ENTITIES**

August 22, 2011

*The Honorable Robert E. Bruchey, II*
*Mayor, City of Hagerstown*

On behalf of the City of Hagerstown ("City") you have requested our opinion regarding the "system of charges" that a local government may adopt to fund stormwater management programs under Annotated Code of Maryland, Environment Article ("EN"), §4-204(d). Specifically, you have asked:

(1) Whether the City may use the proceeds of a tax or fee under EN §4-204(d) to finance curb construction and maintenance.

(2) Whether such a charge may be assessed against a tax-exempt property owner.[1]

For the reasons explained below, our opinion is as follows:

(1) Curbs, if functioning as an integral part of a stormwater management system, may be constructed and maintained with funds obtained through a system of charges imposed by a local governing body pursuant to EN §4-204(d).

(2) Whether such a charge may be assessed against a tax-exempt property owner depends on the nature of the particular

---

[1] Consistent with our policy concerning local government opinion requests, you included with your request a legal opinion from the City Attorney. The City Attorney determined that curb construction and maintenance could be appropriately funded by a system of charges established by the City under EN §4-204(d). The City Attorney also opined that charges for curb construction and maintenance would likely be considered a tax, which could not be levied upon a tax-exempt entity.

charge assessed under EN §4-204(d). If a property tax is imposed, then tax-exempt entities would be exempt from the assessment. However, a valid utility user fee, regulatory program fee, or excise tax could be assessed against many tax-exempt entities.

## I

## Background

### A.    *Evolution of Stormwater Management*

Stormwater management initially focused on urban flood prevention, later evolved into resource management, and, more recently, has become an environmental and regulatory function. Maryland Department of the Environment, *Report on Stormwater Management Act of 2007* (2008) (the "2008 MDE Report") at 1. Current stormwater management still addresses flood prevention (*i.e.*, quantity control), but pollution control (*i.e.*, quality control) is also of concern, because stormwater collects pollutants as it runs off developed properties. 2008 MDE Report at 5. What was once unregulated flood prevention is now a carefully regulated activity, requiring the planning, design, construction, and maintenance of a system that will ensure compliance with various laws, such as the Maryland Stormwater Management Act, EN §4-201 *et seq.*[2], and the federal Clean Water Act, 33 U.S.C. §1251 *et seq.*[3] *See* 2008 MDE

---

[2] The General Assembly first enacted the Stormwater Management Act in 1982, Chapter 682, Laws of Maryland 1982, and has amended it several times in the intervening years.   A review of the history of that statute through 2006 may be found in 91 *Opinions of the Attorney General* 152 (2006).   The 2008 MDE Report was produced in response to a provision of the Stormwater Management Act of 2007 directing MDE to evaluate options for a stormwater management fee system and an appropriate schedule of fees for enforcement of the stormwater management laws.  Chapters 121, §2, 122, §2, Laws of Maryland 2007.

[3] Under the federal Clean Water Act (the "CWA"), State and local governments must meet certain water quality standards.  For example, under the CWA's National Pollutant Discharge Elimination System ("NPDES") regulations, administered by the State pursuant to 33 U.S.C. §1342(b), certain counties and municipalities must comply with strict standards for stormwater runoff and ensure that certain minimum control measures are implemented.  40 CFR 122.26; *see also* NPDES General

(continued...)

Report at 4–5.

### B.    *Stormwater Management Act*

#### 1.    Local Stormwater Management Programs

In the Stormwater Management Act ("the Act"), the Legislature found that "the management of stormwater runoff is necessary to reduce stream channel erosion, pollution, siltation and sedimentation, and local flooding" in order to protect the State's water and land resources.   EN §4-201. The Act is intended "to reduce as nearly as possible the adverse effects of stormwater runoff ...." *Id*.  To achieve this goal, the Act requires, among other things, that each county and municipality have an ordinance implementing a stormwater management program that is consistent with flood management plans and that meets certain minimum requirements. EN §§4-202, 4-203.

#### 2.    Local System of Charges

A key provision of the Act authorizes each county and municipality to adopt a "system of charges" to fund the implementation of stormwater management programs.   EN §4-204(d).  The revenues generated by the system of charges may be used for:

> (i)    Reviewing stormwater management plans;
>
> (ii)   Inspection and enforcement activities;
>
> (iii)  Watershed planning;
>
> (iv)   Planning, design, land acquisition, and construction of stormwater management systems and structures;

---

[3] (...continued)
Permit for Discharges from Small Municipal Separate Storm Sewers (April 14, 2003), *available at* <http://www.mde.state.md.us/assets/document/NPDES%20Phase%20II%20General%20Permit.pdf#page_28> (last visited August 9, 2011).

>> (v)     Retrofitting developed areas for pollution control;

>> (vi)    Water quality monitoring and water quality programs;

>> (vii)   Operation and maintenance of facilities; and

>> (viii)  Program development of these activities.

EN §4-204(d)(1). The charges take effect upon enactment by the local governing body and may be collected in the same manner as county and municipal property taxes. EN §4-204(d)(2), (3).[4]

Although the Act requires local governments to adopt an ordinance implementing a stormwater management program, the grant of authority to establish a system of charges is permissive. Accordingly, a local governing body can choose to pay the costs of the program with general revenue funds or with the proceeds of a "system of charges."

### 3.    State Guidance and Assistance

The General Assembly has charged the Maryland Department of the Environment ("MDE") with various duties related to the administration and enforcement of the Act. Among other things, MDE is to adopt regulations that establish criteria and procedures for stormwater management. EN §4-203(b). MDE has suggested that, although regulatory fees or taxes could be charged to fund stormwater management programs, local governments may also impose stormwater utility user fees based on the runoff contribution of a property. 2008 MDE Report at 13 (stormwater utility fee could generate "funding that is adequate, stable, equitable, and dedicated solely to the stormwater function"); *see also* Maryland Department

---

[4] The statute does not apply to the construction activities of State or federal agencies. EN §4-205(a). Stormwater management plans for such activities are administered through the Maryland Department of the Environment. EN §4-205(b)-(c).

of the Environment, *Financing Stormwater Management: the Utility Approach* (1988) ("*Financing Stormwater Management*") at 7.[5]

# II

## Analysis

### A. Whether Curb Construction and Maintenance May be Funded

You first ask whether the City may finance curb construction and maintenance through a system of charges authorized under EN §4-204(d). The statute does not explicitly mention curb construction and maintenance. But it states that the revenues resulting from a system of charges may be used for the planning, design, and construction of "stormwater management systems and structures" and the operation and maintenance of "facilities." EN §4-204(d)(1)(iv), (vii). Thus, curb construction and maintenance may be funded under EN §4-204(d) if curbs are an integral part of a stormwater management system.

In its regulations, MDE has defined "stormwater management" to include, *inter alia*, quantitative control through "a system of vegetative and structural measures that control the increased volume and rate of surface runoff caused by man-made changes to the land." COMAR 26.17.02.02(B)(36)(a). A "stormwater management system" is comprised of "natural areas, [environmental site design] practices, stormwater management measures, and any other structure through which stormwater flows, infiltrates, or discharges from a site." COMAR 26.17.02.02(B)(38).

Curbing is a structure through which stormwater flows and is discharged from a site. *See* 2000 Maryland Stormwater Design Manual (rev. 2009) at p. 1.4 (recognizing use of curbs and other structures to control stormwater flow). It thus can play a critical role in stormwater management systems:

---

[5] MDE has published a model ordinance for local governments that adopts that approach – *i.e.*, creating a utility within a local government. Maryland Department of the Environment, *Maryland Sample Stormwater Utility Ordinance* (1988 rev. 2003).

> Traditionally, the major objective of installing separate storm sewers has been to remove as much stormwater runoff from developed lands as soon as possible. To achieve this goal, local governments have constructed thousands of miles of curb, gutter, road side ditches, and other storm sewers to convey stormwaters as quickly and as efficiently as possible to the nearest stream.

Weiss, *Stormwater and the Clean Water Act: Municipal Separate Storm Sewers in the Moratorium*, *in* U.S. Envtl. Prot. Agency, *National Conference on Urban Runoff Management: Enhancing Urban Watershed Management at the Local, County, and State Levels* (EPA-625-R-95-003) 47, 57 (1995).

There appears little doubt that curb construction and maintenance can be an integral part of a stormwater management program. Thus, in our view, revenues generated from a system of charges adopted pursuant to EN §4-204(d) may be used for that purpose.[6]

### B. Whether a Charge for Curb Construction and Maintenance May be Assessed Against Tax-Exempt Entities

You also ask whether a charge for curb construction and maintenance established under the authority of EN §4-204(d) may be assessed against a tax-exempt property owner. EN §4-204(d) itself does not specify any exemptions. Thus, any exemption from such an assessment derives from other authority that may vary according to the type of charge assessed and the type of tax-exempt entity.

---

[6] We thus agree with the City Attorney, who concluded that, "based upon purpose and function, curbing quite appropriately qualifies as an integral part of a stormwater management system." City Attorney's opinion at 2. The City Attorney appropriately relied on the analysis of an Assistant City Engineer, who indicated that curbing functions as an integral part of a stormwater drainage network.

### 1. Potential Types of Charges

In EN §4-204(d), the General Assembly authorized local governments to establish a "system of charges" to fund their stormwater management programs.[7] In a prior opinion, this Office conducted a comprehensive review of the statute's legislative history and purpose and concluded that the broadly-worded phrase "system of charges" includes both taxes and fees. *See* 91 *Opinions of the Attorney General* 152, 157–60 (2006) ("2006 Opinion").[8]

In categorizing the types of charges assessed by local governments, Maryland courts have distinguished taxes from regulatory fees and user fees depending on the function of the particular charge. Generally, a tax is designed primarily to raise revenue, a regulatory fee funds a regulatory measure, and a user fee pays for a commodity consumed or a service rendered. *See Eastern Diversified v. Montgomery County*, 319 Md. 45, 52-53, 570 A.2d 850 (1990) (regulatory fee v. tax); *Mass Transit Administration v. Baltimore County Revenue Auth.*, 267 Md. 687, 694-95, 298 A.2d 413 (1973) (tax v. toll or user fee); *Maryland Theatrical Corp. v. Brennan*, 180 Md. 377, 380–81, 24 A.2d 911 (1942) (regulatory fee v. tax); *Home Owners' Loan Corp. of Washington, D.C. v. Mayor of*

---

[7] Under the State Constitution, a local government may assess a tax, fee, or other charge only with the assent of the General Assembly. Maryland Declaration of Rights, Article 14; Maryland Constitution, Article XI-E, §5 (municipality may not levy new fee without express authorization of General Assembly); *see also River Walk Apts, LLC v. Twigg*, 396 Md. 527, 544, 914 A.2d 770 (2007).

[8] The specific question addressed by the 2006 Opinion was "whether the authorized charges are in the nature of a *regulatory* fee or a tax." 2006 Opinion at 152 (emphasis added). Although the requester did not inquire about user or service fees, the opinion briefly noted that stormwater management charges might be based on use. *Id*. at 155 n.2. The opinion also suggested that it might be difficult to develop a formula for computing a fee based on use. *Id. citing, inter alia*, 91 *Opinions of the Attorney General* 14 (proposed "street utility fee" based on average trip generation data not a user fee). However, MDE's guidance offers a method for calculating usage of stormwater management measures that may allow for the assessment of a reasonable user charge. If such a method is used, there would be no legal barrier to the assessment of a user fee as part of the system of charges under EN §4-204(d).

*Baltimore*, 175 Md. 676, 681, 3 A.2d 747 (1939) (difference between tax and charge based on use of water). Within the category of taxes related to property, a distinction is made between a tax based on the value of the property – often called a "property tax" – and a tax based on the use of the property – often referred to as an "excise tax." *See Waters Landing Limited Partnership v. Montgomery County*, 337 Md. 15, 26, 650 A.2d 712 (1994); *Weaver v. Prince George's County*, 281 Md. 349, 358-59, 379 A.2d 399 (1977). We next elaborate on each of these types of charges in the context of stormwater management.

### a.     User Fee

A user fee for curb construction and maintenance might be charged by a stormwater utility. A stormwater utility provides the service of stormwater management, much as public water and waste water utilities provide those services.[9] *See* Maryland Department of the Environment, *Potential Revenues from Stormwater Utilities in Maryland* (July 1991) ("1991 MDE Report") at 2-1 to 2-3. A user fee would be based on the contribution of a given parcel of property to the total volume of stormwater that must be managed. 1991 MDE Report at 2-1; *see also* 2008 MDE Report at 10–11. A parcel developed with impervious structures, driveways, and patios does not retain stormwater as well as undeveloped land and thus contributes more runoff. 1991 MDE Report at 2-1. The rationale for the stormwater utility user fee approach, therefore, is that the generator is charged for the service provided to control the runoff from the generator's parcel. 1991 MDE Report at 2-1 to 2-2; *Financing Stormwater Management* at 6. The Court of Appeals has relied on a similar rationale to uphold a special assessment in a similar context. *Leonardo v. Board of County Commissioners*, 214 Md. 287, 306-9, 134 A.2d 284 (1957) (upholding erosion control charge based on waterfront footage); *see also Sarasota County v. Sarasota Church of Christ, Inc.*, 667 So.2d 180, 185 (Fla. 1995) (upholding special assessment for stormwater facilities against developed properties that generate polluted runoff and therefore benefit from such facilities).

---

[9] In this regard, it is notable that the General Assembly has referred to "drainage," as well as water and sewerage, as a service that a local government may provide. *See* EN §9-705(8) ("A municipal authority may ... withhold water, sewerage, or drainage service from any property that abuts on any street for which a person establishes lines and grades without the approval of the municipal authority").

MDE has developed a model ordinance that includes a stormwater utility user fee. Maryland Department of the Environment, *Maryland Sample Stormwater Utility Ordinance* (1988 rev. 2003). Under MDE's model ordinance a local government would create a stormwater utility and impose user fees to finance stormwater management programs. Sample Ordinance §§1.3, 5.0. The user fee provision in the model ordinance reads in part:

> Such charges shall be paid by each user of the stormwater system and will reflect the extent to which each user contributes runoff to the system. The charges will bear a substantial relationship to the cost of service provided to the property. The rate structure shall be fair and equitable, simple and easy to administer, and generate sufficient revenue to fund all necessary utility activities.

Sample Ordinance §5.1. MDE's model standard for assessment of a stormwater utility user fee is similar to that required for water and sewer utility user fees. *See West Capital Associates Limited Partnership v. City of Annapolis*, 110 Md. App. 443, 452-53, 677 A.2d 655 (1995) (describing standards for assessment of water and sewer fees).[10]

### b. Regulatory Fee

The 2006 Opinion concluded that a local government may impose a regulatory fee as part of a system of charges under EN §4-204(d). As explained in that opinion, a regulatory measure generally imposes requirements on the regulated person beyond the mere payment of a fee. 2006 Opinion at 156. The fee must be reasonable and the amount of revenue generated must bear some relation to the purpose of the regulation. *Id*. While a regulatory fee may raise revenue, its predominant purpose should be regulatory, such as defraying the expense of regulation. *Eastern Diversified*, 319 Md. at 53–55; *Maryland Theatrical Corp.*, 180 Md. at 380–81.

---

[10] The court noted that a utility user fee is not considered a tax or even in the nature of a tax because such a fee is based on either consumption of a commodity or provision of a service and does not represent a general exaction applicable to persons who do not use the service or commodity. 110 Md. App. at 451.

We are not aware of any Maryland cases concerning the use of regulatory fees to finance stormwater management, but courts in other states have upheld such regulatory fees. *See Twietmeyer v. City of Hampton*, 497 S.E.2d 858, 859, 861 (Va. 1998) (charge to recover stormwater control program costs, including construction, operation, and maintenance activities, was regulatory fee, not tax); *Teter v. Clark County*, 704 P.2d 1171, 1180 (Wash. S. Ct. 1985) (charge imposed on homeowners to finance water management department was regulatory fee and not a tax); *Smith v. Spokane County*, 948 P.2d 1301, 1306–7 (Wash. App. 1997) (charge designated to fund, among other things, storm or surface water drainage collection, disposal and treatment was valid regulatory fee and not a property tax).

### c.    Taxes

The 2006 Opinion also concluded that a local government could impose a property tax or excise tax as part of a system of charges under EN §4-204(d).  2006 Opinion at 161.  A tax, generally, is an enforced contribution "in return for the general benefits of the government, and it promises nothing to the persons taxed, beyond what may be anticipated from an administration of the laws for individual protection, and the general public good." *Brooks v. Baltimore*, 48 Md. 265, 268–69 (1878) (citation and quotation marks omitted); *see also Allied Am. Mut. Fire Ins. Co. v. Comm'r of Motor Vehicles*, 219 Md. 607, 616, 150 A.2d 421 (1959); 2006 Opinion at 155.  In other words, the primary purpose of a tax is to raise revenue for general public purposes.  Although a revenue raising measure might include some regulatory elements, generally, an act is a revenue raising measure when it appears from the act itself that revenue is its main objective. *Eastern Diversified*, 319 Md. at 53; *Maryland Theatrical Corp.*, 180 Md. at 381-82.

As noted in the 2006 Opinion, if a charge is assessed as a tax, there may be different consequences if the tax is an excise tax rather than an *ad valorem* property tax.  2006 Opinion at 161.  A property tax would need to be implemented in accordance with the uniformity requirement of Article 15 of the Maryland Declaration of Rights.  In addition, as explained in greater detail below, certain exemptions from a property tax do not extend to an excise tax.

### 2.     Charges Assessable As to Particular Types of Tax-Exempt Entities

*a.     State and Local Government Entities*

In general, property owned by the State, a county, or a municipal corporation and used for governmental purposes is not subject to a property tax.  Annotated Code of Maryland, Tax-Property Article ("TP"), §7-210(a).  Property owned by an instrumentality of the State or local government may be exempt, to the extent that a law exempts the property from property tax. *See* TP §7-210(b).  Therefore, if a municipality establishes a property tax as part of the system of charges under EN §4-204(d), then property owned by State and local governments would not be subject to the charge, but property owned by their instrumentalities would be, unless specifically exempt by law.

The assessment of other types of charges against State and local entities is less straightforward.  The authorization to create a system of charges in EN §4-204(d) does not apply to construction activities of the State.  EN §4-205(a).  Therefore, charges could not be assessed against State entities in relation to construction activities. In addition, as a general principle, the State is not subject to regulation under an enactment of the General Assembly unless there is "a clear and indisputable intention" that the State be subject to that regulation. *See Mayor and City Council of Baltimore v. State*, 281 Md. 217, 223, 378 A.2d 1326 (1977).  Similarly, a county would ordinarily not be subject to regulation by a municipality. *See* 73 *Opinions of the Attorney General* 238 (1988).  Consistent with these principles, the term "person" in a statute is ordinarily construed not to apply to the State or political subdivisions. *See* 85 *Opinions of the Attorney General* 3 (2000).

In the Stormwater Management Act, the General Assembly has indicated an intention to cover State and local entities.  For example, the definition of "person" applicable to the Act explicitly includes governmental entities.  EN §4-101.1 ("'Person' includes the federal government, the State, any county, municipal corporation, or other political subdivision of the State, or any of their units").  Moreover, there would have been no need to exclude "construction activities" of State entities from the reach of EN §4-204 if the Act was not intended to regulate State entities.  Finally, even when a State entity

is exempt from taxes or other local government charges, it may be subject to a fee for services provided by a local government. *See, e.g.*, *Mass Transit Administration*, 267 Md. at 697 (State agency required to pay bridge tolls that did not fall within the categories of taxes and other charges from which agency was exempt). Thus, in our view, the State, a county, or a municipal corporation, or their instrumentalities could be assessed a utility user fee, and may be subject to a regulatory fee or an excise tax that is part of a system of charges under EN §4-204(d).[11]

### b.    *Federal Government Entities*

As a general rule, federal agencies are exempt from State and local taxes unless Congress expressly consents. *United States v. City of Huntington, West Virginia*, 999 F.2d 71, 73 (4th Cir. 1993), *cert. denied*, 410 U.S. 1109 (1994). On the other hand, federal agencies are generally liable to pay reasonable user fees assessed by State or local agencies – for example, charges for services provided by municipal utilities. *Id*.; *see also United States v. Harford County*, 572 F.Supp. 239, 241 (D.Md. 1983). The same principle would apply to a regulatory fee based on the provision of a specific service.

With particular application to stormwater programs, in Section 313 of the federal Clean Water Act, Congress has waived sovereign immunity and accepted liability as to all reasonable stormwater program service charges assessed against federal property regardless of whether such a charge is denominated a fee or a tax. 33 U.S.C. §1323(a). Specifically, each department, agency, or instrumentality of the federal government having jurisdiction over any property or engaged in any activity resulting in the discharge or runoff of pollutants:

---

[11] MDE's model stormwater utility ordinance contemplates that public properties would be charged "as if they were private properties." Sample Ordinance, §5.5.

> shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of *reasonable service charges*.

33 U.S.C. §1323(a) (emphasis added). The statute defines "reasonable service charge" to include "any reasonable nondiscriminatory charge ... that is [both] based on some fair approximation of the proportionate contribution of the property" to stormwater pollution in terms of stormwater runoff rate, quantity, or quality, and "used to pay or reimburse the costs associated with any stormwater management program ... including [all] programmatic and structural costs attributable to collecting stormwater, reducing pollutants in stormwater, and reducing the volume and rate of stormwater discharge...." 33 U.S.C. §1323(c).[12] Thus, whether a regulatory fee could be assessed against a federal governmental entity would likely depend on whether it related to a service provided to the federal entity and met the standard in §1323(c) for a reasonable service charge.[13]

As noted above, MDE's model ordinance includes a stormwater utility user fee that is calculated according to a reasonable and non-discriminatory method. If implemented in that fashion, it could be assessed against federal government entities. The model ordinance recognizes that such a user fee could be assessed against various governmental entities that are otherwise exempt from taxation. MDE Model Ordinance, §5.5.

---

[12] This definition was recently added to clarify the limits of federal agency responsibility. Pub.L. 111-378, §1, 124 Stat. 4128 (Jan. 4, 2011).

[13] Also, as noted above, State law exempts "construction activities" of federal agencies from the system of charges under EN §4-204(d). EN §4-205(a).

*c.* *Non-Governmental Entities*

The tax-exempt status of a non-governmental property owner is irrelevant with regards to regulatory fee or user charge as such fees are neither taxes nor charges in the nature of taxes. *See Mass Transit Authority*, 267 Md. at 696; *West Capital Assocs.*, 110 Md. App. at 450. Thus, a regulatory or user fee could be assessed against an otherwise tax-exempt non-governmental entity.

Even if a non-governmental entity is exempt from federal income taxation, it is not automatically exempt from State taxation in Maryland. Excise taxes are not a general tax category subject to exemption under State law. Certain charitable, fraternal, educational, religious, or other similar organizations may be eligible for an exemption from State property tax, State income tax, or sales and use tax. Such an entity must satisfy specific requirements to qualify for each type of State tax exemption. *See* information posted by the Maryland Secretary of State at <[www.sos.state.md.us/charity/non-profit.aspx](www.sos.state.md.us/charity/non-profit.aspx)> (summarizing tax exemptions for which non-profit organizations may qualify); and by the State Department of Assessments and Taxation at <www.dat.state.md.us /sdatweb/exempt.html>.

Thus, whether a charge established pursuant to EN §4-204(d) is assessable against a non-governmental tax-exempt property owner will likely depend on whether the charge would be considered a property tax. An entity exempt from property taxes in Maryland would not be required to pay a property tax imposed to fund stormwater management under EN §4-204(d). TP §§7-201 to 7-243 (exempting certain entities from property taxes). The same entity, however, would be required to pay a valid excise tax, utility user fee, or regulatory fee.

## III

## Conclusion

Our opinion is as follows:

(1) Curbs, if functioning as an integral part of a stormwater management system, may be constructed and maintained with funds obtained through a system of charges imposed by a local governing body pursuant to EN §4-204(d).

(2) Whether such a charge may be assessed against a tax-exempt property owner depends on the nature of the particular charge assessed under EN §4-204(d). If a property tax is imposed, then tax-exempt entities would be exempt from the assessment. However, a valid utility user fee, regulatory program fee, or excise tax could be assessed against many tax-exempt entities.

Douglas F. Gansler
*Attorney General*

Robert N. McDonald
*Chief Counsel*
  *Opinions and Advice* \*

\*Former Associate Sherryl Zounes contributed significantly to the preparation of this opinion.