No. 44,249

Bud Usher, George Brinkman, John Resnar and Fred Kaser, et al., *Appellants*, v. The City of Pittsburg, a Municipal Corporation, *Appellee*.

(410 P. 2d 419)

Opinion filed January 22, 1966.

*James M. Caplinger*, of Topeka, argued the cause and was on the briefs for the appellants.

*Perry Owsley* and *Charles H. Menghini*, both of Pittsburg, argued the cause, and were on the briefs for the appellee.

The opinion of the court was delivered by

Hatcher, C.: This appeal stems from an action challenging the reasonableness of water rates fixed by the city of Pittsburg, Kansas for customers outside the city.

The limited issue for our consideration permits a highly summarized statement of facts when measured by the length of the record.

The city of Pittsburg employed the engineering firm of Wilson and Company to make a comprehensive study of its water department and its operations. The study and a report was made by

Robert T. Selm of that firm. Mr. Selm made a study of the existing system and its capabilities; submitted a proposed improvement program; a proposed financial program; suggested main extensions and water rate adjustments.

The report represented an effort to provide a logical and orderly development of the water system and encompassed all phases of the municipal service from water supply to water distribution and rates.

The report recommended that $1,000,000 be spent on the plant during the next 20 years; recommended an increase in rates which practically doubled the rates being charged by the customers without the city of Pittsburg, and much higher than the amount being charged customers within the city.

The city enacted an ordinance adopting the rate recommended by its independent engineer for water consumers without the city. The plaintiffs then brought this action for judicial review of the reasonableness of the city ordinance. They alleged that the rates sought to be exacted were unreasonable and discriminatory.

After the filing of the petition for judicial review, Selm prepared a more detailed report, or rather a report covering more detailed calculations. The purpose of that report was stated as follows:

"It is the purpose of this water rate study to *outline the basis for establishing a rate multiplier for non-resident water consumers* served by the City of Pittsburg municipal water supply and distribution system. For reasons which will be further developed, past recommendations from the consulting engineers have been to the effect that an increased rate for such non-obligatory service to non-residents should be imposed. Such a rate (100 precent increase) was recommended and put into effect in June 1963, and this study presents, in brief form, the basis for this recommendation. *This report does not establish or recommend new system-wide rate changes inside the city,* although some general observations on the city rate structure will be presented." (Emphasis supplied.)

The plaintiffs, on the trial of the issues, introduced as exhibits the two reports prepared by Selm, the city's independent engineer, and the testimony of one expert witness. The expert witness was a Certified Public Accountant and a Public Utility Accountant whose qualifications were not challenged. He made no attempt to produce figures reflecting on a reasonable rate but gave a discussion as to the methods to be followed in an overall rate investigation. He admitted that he could not say whether the disputed rate was reasonable but questioned the sufficiency of Selm's calculations as to costs for the purpose of a complete rate investigation.

The witness did admit that it was proper to classify customers on the basis of those living inside and those living outside the city limits.

Other witnesses used by the plaintiffs did not testify relative to any specific rates.

The engineer, Selm, was a witness for the defendant, the city. He testified:

"Q. In making a water study of the City of Pittsburg, what information do you obtain and what steps do you take?

"A. Well, I would like to first of all thank my learned colleague, Mr. Whiteaker, who gave a nice explanation of this. It's basically the procedure we use. I would state, however, that we do not attempt to provide a text book and we write a report. We write a report that states the facts that the city wants. We do not include a great deal of charts and tables and data. We give answers, conclusions and recommendations."

He further testified that the plant was ten years behind the time and that a total of $1,000,000 would have to be spent within the next twenty years to bring the plant up to date. He stated: "The rate itself was made in strict accordance with our recommendations —doubled."

He stated that he would make a difference in classification of water users between inside and outside the city:

"Because, as Mr. Whiteaker has said, we feel that there are costs which must be attributed—over and above the cost to the in-city people, there are costs that must be attributed to those that are outside the city. The first of these and the biggest is the fact that outside the city they cannot pay ad valorem taxes to make up deficits where they can in the city. That's the first big lump; that's the forty-seven percent. Then we also feel that there are other factors which we go through in this report. I'm talking about the second report. These factors, I would like to just mention to you—I'm going to read them out of the book. We feel that the forty-seven percent is a differential rate factor for a rate adjustment."

The witness concluded:

"We believe that in order to do this in the kind of a study we made that in order to do this it's not necessary to go through the same procedure that one would go through if we were to recommend an actual rate increase based upon quantities and minimums and all the rest of the business you go through when you make the full-fledged rate increase which we freely admit this is not. We only stipulate that in our opinion *it costs the city a certain amount or a certain percentage more to serve those people outside.*" (Emphasis supplied.)

The trial court concluded in part:

"The court further concludes that the Plaintiff has failed to show that the water rates as presently enforced were unreasonable; that the city made its changes in rates based on a survey made and upon a record maintained by the

Water Department as to the cost of the furnishing of water and the cost of repairs and maintenance of outside water lines."

Judgment was rendered for the defendant and plaintiffs have appealed. We are forced to agree with the conclusions of the trial court.

We find no merit in appellants' charge of discrimination. Although this court has not heretofore passed directly on the question, it is a very general rule that a city operating a municipal water plant and serving customers outside the city limits may make a separate classification of customers without the city for rate making purposes. The fact that the rates charged within the city are different than those charged outside the city does not of itself characterize the rates as discriminatory. (94 C. J. S., Waters, § 297b, p. 205; 4 A. L. R. 2d 598.)

The appellants made the fallacious assumption that they could challenge the reasonableness of the rate by attacking the method by which the rate engineer arrived at his figures recommended to the city. This might go to the weight of the testimony but standing alone it would hardly be sufficient to overcome the presumption that the rate was reasonable and sustain appellants' burden of proving that it was not.

The appellants make no attempt to show what a reasonable rate should be or that the rate established was not reasonable.

However, we see no material weakness in the method which the city's independent engineer used in arriving at his recommended rates. Appellants' rate accountant gave the method and factors for making an overall rate investigation. The city's engineer did not make an overall study of the entire system, but did make an allocation of investment and charges to customers without the city on somewhat the same basis as recommended by the appellants' accountant.

Where a utility has a class of limited customers it is not necessary that it go to the time and expense of a rate investigation for the entire system before adjusting the rate for the class, if there is an otherwise reasonable basis for arriving at the rate.

A city which supplies water to its inhabitants and to customers without the city can establish a rate schedule for such customers different from that used in the city, based on specific investment without the city and allocation of proper proportion of general plant investment, in arriving at rate base, and similar division and

allocation of operating, maintenance and depreciation charges, without conducting a rate investigation for the entire city.

It would serve no useful purpose to review in detail the calculations of the city's independent engineer in arriving at the recommended rate. We must conclude, as did the trial court, that the city, having made the change in rates to customers outside the city on the recommendation of an engineer, after a survey and allocation of investments and charges to the particular customers, the rates are presumed reasonable, and appellants have failed to show that the rates were not reasonable.

The judgment is affirmed.

APPROVED BY THE COURT.