No. 77,867

MARVIN BODINE and All Others Similarly Situated, *Plaintiffs/Appellants*, v. OSAGE COUNTY RURAL WATER DISTRICT # 7, *Defendant/Third-Party Plaintiff/Appellee*, v. CITY OF OSAGE CITY, KANSAS, *Third-Party Defendant/Appellee*.

(949 P.2d 1104)

Opinion filed December 12, 1997.

*Stephen P. Weir*, of Hein and Weir, Chartered, of Topeka, argued the cause and was on the briefs for appellants.

*David E. Bengtson*, of Morrison and Hecker, L.L.P., of Wichita, argued the cause, and *Alan L. Rupe*, of the same firm, was with him on the brief for third-party plaintiff/appellee.

*Justice B. King*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause, and *David R. Cooper*, of the same firm, was with him on the brief for third-party defendant/appellee.

The opinion of the court was delivered by

ABBOTT, J.: The plaintiff, Marvin Bodine, is a resident ratepayer within Osage County Rural Water District # 7 (RWD). He sued RWD in a class action for improper water rates, alleging seven different claims. RWD purchases its water from the City of Osage City (City). RWD joined the City as a third-party defendant for indemnification purposes, should Bodine prevail in his action against RWD. The trial court granted summary judgment against Bodine and in favor of RWD. The trial court also dismissed RWD's claims against the City as moot.

In reading the facts, it should be kept in mind that Bodine's suit is against RWD only and Bodine concedes RWD's rates are reasonable when compared to RWD's expenses, or when compared to what other rural water districts charge. Oversimplified, the dispositive issue in this case is Bodine's contention that RWD is paying more money to the City than RWD is contractually obligated to pay.

RWD was formed in 1967 to provide water at a reasonable rate. Bodine was one of the founders of RWD and was a member of the board of directors from January 15, 1968, through February 26, 1980. In 1972, while Bodine was on the board, RWD entered into the contract at issue with the City, whereby the City agreed to sell treated water to RWD for a specified price. This contract provides in pertinent part:

"1. SALE OF WATER: The City agrees to sell to the District at the point of delivery hereinafter specified, during the term of this agreement or any renewal or extension thereof, potable treated water meeting applicable purity standards of the Kansas State Board of Health in such quantity as may be required by the District.

"2. TERM OF AGREEMENT: This agreement shall extend for a term of forty (40) years from the date of the initial delivery of any water to the District as evidenced by the date of the first statement submitted by the City to the District, and, thereafter may be renewed or extended for such term or terms, as may be mutually agreed upon by the City and District.

. . . .

"8. WATER RATES: The District agrees to pay to the City, subject to the provisions of Paragraph 7 above, for water delivered in accordance with the following schedule of rates:

a. Fifty cents (50¢) per one thousand (1,000) gallons, which amount shall be the minimum rate per month, or a yearly minimum sum of eight thousand dollars ($8,000), whichever shall be highest. The yearly minimum rate shall commence January 1, 1974.

b. If the City of Osage City is forced to take raw water from the Melvern Reservoir as its source of supply due to extended drought or other conditions beyond its control, then the rate shall increase to sixty-six cents (66¢) per one thousand gallons, which amount shall also be the minimum rate per month, or a yearly minimum sum of $10,500.00, whichever shall be highest. The yearly minimum rate shall commence January 1, 1974.

c. In the event unforseen costs arise in the production of treated water and the City is forced to increase water rates to all customers served, the rural water district base rate in effect will be increased by the same percentage points as charged to all other customers.

d. In the event the City shall at any time exceed a withdrawal from Melvern Reservoir of five hundred (500) acre feet now contracted for, and be required to purchase increased storage, the District will be required to purchase the additional storage to meet its requirements from the same source."

During the term of the Agreement, the following rate increases were imposed by the City and charged to the District:

| Date | Charge Per 1,000 Gallons |
|------|--------------------------|
| 1972 | $ .50 |
| 1978 | $ .85 |
| July 1981 | $1.19 |
| Sept. 1985 | $1.94 |
| Sept. 1989 | $2.23 |

There were other rate increases which occurred on dates between the rate increases cited above. However, these rate increases cited above are the only rate increases which Bodine cites in his petition and in his motion for summary judgment.

Each of these rate increases was charged to RWD by the City, and RWD passed the rate increases on to the resident ratepayers. At the time these rate increases became effective, the City did not offer any evidence that it was "forced" to withdraw water from Melvern Reservoir, or that "unforeseen" costs arose in the production of treated water, or that the rate increase was equal in

percentage to a rate increase also imposed on City residents. However, water was taken from the reservoir and city rates were increased. According to Bodine, the City customers were not charged increased rates equivalent in percentage to some of the increased rates charged to RWD.

Bodine's expert, Mike Butler, reviewed the water rate increases charged by the City to RWD and passed through RWD to its resident ratepayers. He drew the following conclusions about the rates:

"In conclusion, we feel that *the District's water rate is fair* based on their expenditures. The $15.00 monthly debt charge is appropriate and the $4.10 per 1,000 gal. charge for water is about ten percent higher than the actual cost. However, we do believe that the *rate charged for water by Osage City is totally unfair* and this then is being passed on to the patrons of the District in the form of higher water costs."

Butler also concluded that RWD paid its pro rata share of the City's actual cost of water production and its share of any increases in the cost of water production, whether such increases were foreseeable. However, according to Butler, RWD also paid, over the life of the contract, some $400,000 beyond the cost of water production, based on the rates the City charged it.

Based on the rate increases from the City, which RWD passed on to its resident ratepayers, Bodine filed a class action petition on behalf of all of the RWD residents against RWD. Under Count I, Bodine claims that RWD lacks the statutory and contractual authority to pay an amount to the City in excess of the contractual amount due under the Agreement and to pass these extra charges onto the residents of RWD. Under Count II, Bodine claims that an implied contract to pay for private property exists among RWD, the City, and himself, and that RWD breached this contract because it took Bodine's property by charging excessive rates, but gave no benefit to him in return. Under Count III, Bodine alleges that the water rates charged by RWD and paid to the City in excess of the water production costs are an illegal tax imposed upon non-residents of the City. Under Count IV, Bodine claims that the excessive water rates should be struck down because they bear no rational or reasonable relationship to the contractual agreement or

the cost of producing water. Finally, under Count V, Bodine claims that RWD has a contractual duty arising from the contract, from its public trust, and from its official station to pay the City only the water rates contracted for and then to pass only that rate, plus actual costs, on to RWD residents. Bodine requested an order of mandamus, ordering RWD to comply with its contractual duty, and an injunction to permanently enjoin RWD from charging its resident ratepayers any rates in excess of the rate allowed by the contract.

Bodine filed a motion for class certification, and all three parties filed motions for summary judgment. These motions were argued to the Osage County trial court on June 21, 1996. The trial court denied Bodine's motion for class certification, granted RWD's motion for summary judgment, and dismissed the third-party action against the City as moot. In so holding, the trial court stated:

"I find as between the Plaintiff Bodine and the Rural Water District, the issues are as set out in *Shawnee Hills Mobile Homes, Inc. v. Rural Water District #6*, and that is whether or not the Rural Water District rates are reasonable to Mr. Bodine.

"The construction of his allegation is that they are in fact unreasonable to him and that the Rural Water District is paying an amount beyond the contract rate to the City of Osage and thus makes his rate unreasonable.

"The Plaintiff has no direct standing to enforce the contract between the Rural Water District and the City, and his basis again as I've previously stated, must rest upon the fact that the failure of the Rural Water District to enforce the contract causes an unreasonable excessive confiscatory rate to him.

. . . .

"I have carefully considered Paragraph 8 of the agreement. I note that the claim of the Rural Water District against the City is to indemnify only . . . in the event that the interpretation adopted by both the Rural Water District and the City of the contract was found to be erroneous.

"There is [no] present dispute between the two parties to the contract as to the language thereof. I note the Rural Water District and the City are both governmental agencies that can sue and are entitled to be sued.

"The filing of a suit by the Rural Water District against the City of Osage would be a discretionary function. Not one that would be appropriate for this Court to issue an order of mandamus and the Court does not presume to do so.

"I noted the theory of the Plaintiff relative to whether the Rural Water District has the discretionary right to violate a legal duty and they cited *Dougan v. Rossville*

*Drainage District* case, which I've carefully reviewed. I do not find that case applicable to the current situation.

. . . .

"Mr. Bodine is basically asking that I set aside the interpretation of both the Rural Water District and the City and adopt it to the contract that they entered into, and impose a different interpretation which he believes is the proper interpretation; and thus to find as a result of that interpretation that the Rural Water District rates charged to him are in fact unreasonable and excessive and confiscatory.

"There's no indication and no showing to the Court by any of the motions or any of the responses thereto that the Rural Water District has charged any rate beyond that which would yield a fair profit as long as the rate is not disproportionate for the service rendered.

"It appears that as far as the Rural Water District is concerned they're charging a reasonable rate, other than this dispute the Plaintiff says should be had with the Rural Water District and the City.

. . . .

"As between the City and Rural Water District in this matter, they are contractually involved by virtue of the contract. And while the reasonableness of the City's charges to the Rural Water District is not the sole criteria for determining whether or not [their] charges under the contract are right.

"The provisions of Subparagraph 8-C of the contract do in fact bring to a certain extent that reasonableness to bear upon the decision and how the two parties to the contract have interpreted the contract, and basically have lived under it without litigation from the time of its inception on June 27th, 1972, to present.

"Mr. Bodine, a former member of the Board, is attempting to substitute his interpretation of the contract with that of the Board and the City, and that does not appear to be an appropriate procedure.

"In accordance with the *Shawnee Hills* case I must presume that the rates are valid and reasonable til the contrary has been established.

"The only allegation of unreasonableness that it's in excess of the cost paid under this contract to the City is by the Plaintiff.

"I find that . . . there is no dispute of fact as to what they paid when they were raised. And there has not been a litigation between the City and the Rural Water District to interpret that contract differently than they have a long time so interpreted it.

"I therefore find that Mr. Bodine failed in his obligation to furnish evidence to overcome the presumption the rates being charged him are reasonable.

"I therefore grant the Rural Water District's Motion for Summary Judgment and I dismiss the claims herein at the cost of the Plaintiff."

Bodine timely appealed the trial court's ruling to the Court of Appeals. RWD has not appealed the dismissal of its third-party

claim against the City. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

## I. SUMMARY JUDGMENT

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. . . . On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

"Summary judgment is proper where the only question or questions presented are questions of law. [Citation omitted.]" *Fletcher v. Nelson*, 253 Kan. 389, 391, 855 P.2d 940 (1993); *Geiger-Schorr v. Todd*, 21 Kan. App. 2d 1, 3, 901 P.2d 515 (1995).

### A. User Rate Case Analysis

*Shawnee Hills Mobile Homes, Inc. v. Rural Water District*, 217 Kan. 421, 537 P.2d 210 (1975), is a user rate case. This case involved a water user, Mobile Homes, which operated a mobile home court lying within the boundaries of RWD No. 6. Mobile Homes requested an injunction against RWD No. 6, alleging that the rates it charged were unreasonable, excessive, and confiscatory. The trial court agreed that the rates RWD No. 6 charged Mobile Homes were unreasonable, and the court enjoined RWD No. 6 from collecting the charge. RWD No. 6 appealed to this court. This court reversed the trial court's grant of the injunction, finding that RWD No. 6's rates were not unreasonable. In so holding, this court stated:

"District No. 6 is a quasi-municipal corporation (K.S.A. 82a-604) and no claim is made that it is subject to supervision and control by the state corporation commission. Nonetheless, the district is not free to exact whatever rate it sees fit to impose. In *Holton Creamery Co. v. Brown*, 137 Kan. 418, 419, 20 P.2d 503 [1933], this court considered a challenge directed against rates charged by a municipal corporation for water services and there we said:

' . . . Such rates must be reasonable; and persons and corporations dependent on these utilities are entitled to judicial protection against *excessive* or *confiscatory* rates. . . .' (Emphasis supplied.)

"In the *Holton* case, this court defined the standard by which the reasonableness of municipal water rates are to be gauged. As the court announced, rates must be reasonable in the sense that they are not excessive or confiscatory. It is in this frame of reference that we must judge the circumstances of this case.

"It is generally recognized that water rates set by a municipality are presumed to be valid and reasonable until the contrary has been established. (*Usher v. City of Pittsburg*, 196 Kan. 86, 90, 410 P.2d 419 [1966]; 94 C.J.S., Waters, § 289a, p. 173) and the burden of overcoming this presumption rests upon the challenging party. . . .

. . . .

"From 1966 to 1970 Mobile Homes paid for water at the rate of $1 per thousand gallons above a 30,000 gallon minimum. We find nothing in the record that Mobile Homes complained during that period of time that the rate was excessive, oppressive or confiscatory. It was not until [the plaintiff] was informed in September, 1970, that the district had experienced a good year that he unilaterally reduced payments to 50 cents per 1,000 gallons over the minimum, basing his action on an alleged agreement which the trial court found was not established. No cross-appeal has been taken from this finding.

"In support of its charge of unreasonableness, plaintiff primarily relies on the testimony of Harold W. Gerlach, a professional engineer who, according to his own testimony, had never previously developed a water rate. Although he expressed the opinion, or the suggestion as he sometimes put it, that a rate of 80 cents per thousand gallons would be reasonable, his testimony taken as a whole falls short, in our view, of establishing the rate charged plaintiff as being excessive or confiscatory." 217 Kan. at 428-30.

This case demonstrates that a litigant who is not actually a party to the water purchase contract, but is merely a water user who is subject to the rates, may still challenge the rates as improper if the litigant can overcome the rates' presumption of validity and prove that the rates are unreasonable, excessive, and confiscatory.

In this case, Bodine pays his water rates to RWD, not the City. Thus, Bodine has sued RWD, not the City, claiming that the water rates are improper. This court analyzes whether RWD's water rates, not the City's water rates charged to RWD, are unreasonable, excessive, or confiscatory. Since RWD's water rates are presumed valid, Bodine has the burden of overcoming this presumption and proving the rates are unreasonable.

Bodine does not make any direct arguments to prove that RWD's water rates are unreasonable under a *Shawnee Hills* analysis. This is because Bodine does not think a *Shawnee Hills* analysis

applies to this case. He contends that this is a contract rate case instead of a user rate case.

The trial court found that the rates charged by RWD were not unreasonable, excessive, or confiscatory. We agree with the trial court. Bodine has not offered any evidence to overcome the presumption of validity as to RWD's rates and to prove that the rates are unreasonable, excessive, or confiscatory. From 1978 to 1995, Bodine paid for water at rates which were greater than the rates set out in the contract. There is no indication that he complained to the court during this time that the rates were excessive, oppressive, or confiscatory. See *Shawnee Hills*, 217 Kan. at 430. Bodine did not offer any evidence that RWD is charging rates which will yield it more than a fair profit or that RWD's rate is disproportionate to the service it renders, which is purchasing water from the City and providing it to users. See 217 Kan. at 431. Bodine tries to argue that RWD's rates are unreasonable because it passes through to the ratepayers the City's unreasonable rates. In other words, Bodine is trying to indirectly attack the City's water rates. This is not permissible in a user rate case. Bodine receives his water from RWD and pays his rates to RWD, not the City. Thus, the question is whether RWD's rates, taking into account its expenses (such as paying the City for the water), are so excessive that RWD will yield a large profit. This is not the case. Taking into account what RWD was required to pay the City for the water, RWD's rates are not disproportionate to the service rendered. As such, Bodine has not overcome the presumption of validity and proven that RWD's rates are unreasonable, excessive, oppressive, or confiscatory, even when all the facts are viewed in favor of Bodine. Bodine's claim, as a noncontract water user, that RWD's rates are improper, fails. The trial court properly granted summary judgment to RWD on this water user rate claim.

## B. Contract Rate Case Analysis

While Bodine is merely a water user and not a direct party to the water purchase contract, Bodine claims that the *Shawnee Hills* case does not apply because this is a "contract rate case" and not a user rate case as discussed in *Shawnee Hills*. Thus, according to

Bodine, the rates charged by the City and passed through RWD to the ratepayers are improper because they are in violation of the clear and unambiguous terms of the contract, regardless of the reasonableness or unreasonableness of the rates. Bodine asks the court to make the City and RWD abide by the strict terms of the contract and correct the rates. Bodine claims that this is a "contract rate case," and not a "user rate case," because he alleges that he has the right and the power to make RWD enforce the contract with the City. According to Bodine, RWD is a public entity which has a legally enforceable duty, owing to him as a user ratepayer, to enforce the contract with the City and correct the overcharges. Bodine bases this contention on three different sources.

First, Bodine cites to Att'y Gen. Op. No. 87-19, which states the rule that an entity created by statute (such as RWD) only has power as conferred upon it by statute. Att'y Gen. Op. No. 86-31 clarifies that the purpose of a rural water district is not commercial but is to generate revenue to pay for its facilities. Bodine points out that a contract made between a rural water district and a city is enforceable if it is an arms-length transaction and is made in a reasonable manner. See Att'y Gen. Op. No. 87-146. Finally, all monies generated by rural water districts are public money or funds in nature, pursuant to statute. Att'y Gen. Op. No. 87-157. Based on this authority, Bodine alleges that RWD owes him a duty to enforce the contract with the City as Bodine interprets the contract.

It is true that a rural water district is a creature of statute and that the legislature has specifically conferred upon a rural water district the power to enter into an arms-length contract with a city in a reasonable manner, so as to provide water to the district, not to generate revenue out of public funds. K.S.A. 82a-619. However, just because a rural water district has the statutory power to enter into a reasonable contract with a city for the purchase of water does not mean the rural water district owes a duty to the water users, who are not parties to the contract, to interpret the contract exactly as the users interpret it and enforce the contract with the city as the users wants the contract interpreted.

As a second source for Bodine's contention that he has the power and right to make RWD enforce the contract with the City, as he interprets the contract, Bodine points to the rules of contract law.

Bodine is correct that RWD and the City have entered into a legally binding contract for the purchase of water. Bodine is also correct that this contract imposes a legally enforceable duty on RWD and the City to abide by the terms of the contract. However, Bodine is mistaken as to whom this duty is owed. As a statutorily authorized party to the contract, RWD owes a duty to the other party to the contract, the City, to abide by the terms of the contract. However, RWD does not owe a duty to Bodine, who is not a party to the contract, to interpret the contract in the same manner as Bodine interprets it and to force the City to abide by this interpretation. Just because the parties to the contract are public entities does not mean the duties arising out of the contract are owed to people who are not parties to the contract. The contract does not give Bodine the power to make RWD enforce the contract with the City as Bodine interprets the contract.

Finally, as a third source for Bodine's contention that he has the power to make RWD enforce the contract with the City, as he interprets the contract, Bodine relies on letters from the Kansas Water Association (KWA) to RWD, encouraging it to pursue a suit against the City for breach of contract. In no way do the letters which Bodine relies upon from the KWA indicate that RWD has a legal enforceable duty owing to Bodine to enforce the contract with the City. Further, even if these letters did indicate such a position, KWA is not a legal authority and its opinion would have no control over the parties or this court.

Thus, while RWD is a public entity, it does not owe a legally enforceable duty to Bodine, who is not a party to the contract, to enforce the contract with the City. As such, even assuming all the facts in Bodine's favor, Bodine does not have the right or the power to make RWD enforce the contract with the City. In other words, as a nonparty to the contract, Bodine does not have standing to enforce the terms of the contract as he interprets them.

Bodine asserts that he does have standing to challenge the contract by pointing to K.S.A. 60-907, which provides in pertinent part:

"(a) Illegal tax, charge or assessment. Injunctive relief may be granted to *enjoin the illegal* levy of any tax, *charge* or assessment, the collection thereof, or any proceeding to enforce the same.

"(b) Unauthorized contracts. *Injunctive relief may be granted to enjoin any public officer, board, or body from entering into any contract or doing any act not authorized by law that may result in the creation of an additional levy of a tax, charge or assessment.*" (Emphasis added.)

The test for standing under K.S.A. 60-907 is whether a taxpayer's pocketbook is affected by government action. *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, 382, 834 P.2d 1344 (1992).

Bodine alleges that by charging RWD more than the actual production costs of water, the City is raising more revenue than is needed to cover the water production costs. According to Bodine, the City is using the extra money as a substitute for property taxes in order to pay for city services such as police and fire protection. Thus, Bodine claims that City water rates amount to an illegal tax, which RWD passes on to its users, without challenging the rates or forcing the City to abide by the contractual rates.

By statute, RWD has been specifically prohibited from levying taxes. K.S.A. 82a-619(d). Thus, Bodine claims that RWD, as a public body, has entered into a contract that has resulted in an illegal charge or tax in violation of K.S.A. 60-907.

Bodine misapplies his K.S.A. 60-907 standing argument under this particular claim. Bodine is not seeking to enjoin the entering into of a contract or the collection of a tax. Rather, Bodine is trying to make RWD and the City abide by certain terms set out in the contract, as he interprets them. In other words, under this particular claim, Bodine is trying to make RWD enforce the contract with the City, not enjoin the contract. Thus, K.S.A. 60-907 does not apply to this claim or give Bodine standing to bring this claim. This is a direct breach of contract action for which Bodine does not have standing because he is not a party to the contract.

Since Bodine is not a party to the contract, he must do more than show the rates are contrary to the contract terms in order to prove that the rates are improper. To prove that the rates are improper, Bodine, as a water user only, must show that the rates are unreasonable and confiscatory under the *Shawnee Hills* user rate case analysis. As previously discussed, Bodine did not and could

not do so. The trial court properly granted summary judgment on this water contract rate claim.

### C. Mandamus

K.S.A. 60-801 states:

"Mandamus is a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law."

"Mandamus is a proceeding designed for the purpose of *compelling the performance of a clearly defined duty, not involving the exercise of discretion,* by a person or corporation whose duty arises out of a trust relationship, or a public or corporate responsibility." *Mobil Oil Corporation v. McHenry,* 200 Kan. 211, Syl. ¶ 14, 436 P.2d 982 (1968).

Bodine claims that RWD has a legal duty, arising from the water purchase contract and owing to the residents of RWD, to pay only those rates which are set out in the contract when purchasing water from the City. Since RWD is paying more for water than the terms in the contract provide and RWD is refusing to sue the City to enforce the contract terms, Bodine claims that RWD is breaching its duty to RWD residents to pay only the rates set out in the contract (and pass only this amount onto the RWD residents). Thus, Bodine asserts that mandamus is an appropriate proceeding to compel the RWD Board to perform a specified duty resulting from operation of law—the duty to sue the City and enforce the terms of the contract. According to Bodine, RWD should enforce the contract, RWD should pay lower rates to buy water from the City, and RWD should pass lower rates onto the residents in the district. As such, Bodine asks this court to grant mandamus.

However, mandamus is only appropriate to compel a defendant to comply with a clearly defined *legal duty,* one which does not involve the exercise of discretion. *Mobil Oil,* 200 Kan. 211, Syl. ¶ 14. The contract between RWD and the City imposes a duty on RWD to fulfill the terms of the contract: See *Beeson v. Erickson,* 22 Kan. App. 2d 452, 458-59, 917 P.2d 901, *rev. denied* 260 Kan. 991 (1996) (quoting *Isler v. Texas Oil & Gas Corp.,* 749 F.2d 22,

23-24 [10th Cir. 1984]). However, this duty is only owing to the City, the other party to the contract, and not to Bodine. Further, RWD may owe some duty to RWD residents to ensure that the City properly complies with the contract. However, that duty is only a discretionary duty, not a mandatory one. There are several factors which go into determining whether one party to a contract should sue the other party to a contract because the other party is not abiding by the terms of the contract. These factors include: the intent of the parties when the contract was entered into; the interpretation of the contract terms; the reasonableness of the breach; the cost of a lawsuit; and the relationship between the parties, etc. Just because the City may be breaching the contract, RWD is not required to automatically sue the City to enforce the contract terms. Instead, RWD must evaluate all the considerations to determine if suing the City is the best action to take. Any duty RWD may owe to its residents to sue the City and enforce the terms of the contract is discretionary, depending upon the circumstances and the judgment of the RWD board. Since RWD has not violated a *mandatory* duty by refusing to sue the City and enforce the allegedly breached contract, mandamus is not appropriate herein as a matter of law.

In addition, Bodine, as a private citizen, has no standing to bring a mandamus action. As *Mobil Oil* states:

"While mandamus will not ordinarily lie at the instance of a private citizen to compel the performance of a public duty, it has been held where an individual shows an injury or interest specific and peculiar to himself, and not one that he shares with the community in general, the remedy of mandamus and the other extraordinary remedies are available." 200 Kan. 211, Syl. ¶ 17.

Bodine has not shown an injury specific or peculiar to himself, separate from one shared with the community in general. In fact, Bodine claims he and all other district members have suffered the same injury, which is why he sought to have the case certified as a class action. Without a specific injury, Bodine's request for a remedy of mandamus fails, although for a different reason than the one enunciated by the trial court. "A district court's reasons for its decision are immaterial if the ruling was correct for any reason." *Dickerson v. Kansas Dept. of Revenue*, 253 Kan. 843, Syl. ¶ 3, 863

P.2d 364 (1993). The trial court properly granted summary judgment to RWD on this mandamus issue.

### D. Third-Party Beneficiary

Bodine points out that he may enforce a contract expressly made for his benefit even though he was not a party to the contract. If a person makes a promise to another for the benefit of a third person, the third person may maintain an action to enforce the contract. A beneficiary can enforce a contract if the contracting parties intended for the beneficiary to receive a direct benefit from the contract. *Martin v. Edwards*, 219 Kan. 466, 472-73, 548 P.2d 779 (1976).

Applying these concepts to this situation, Bodine points out that RWD made a promise to the City and vice versa for the benefit of himself and all other RWD residents. Bodine claims that RWD and the City intended for him and the other RWD residents to receive a direct benefit from the contract. Thus, Bodine claims he is a third-party beneficiary to the water purchase contract and that he may maintain an action to enforce the contract even though he is not a party to the contract.

We do not believe a patron of a utility is a third-party beneficiary of a contract that helps provide a service to the patron. In any event, Bodine's third-party beneficiary argument fails because of the duty issue.

Bodine claims RWD has breached a legal duty it owes to him to make the City abide by the terms of the contract. However, Bodine does not claim that RWD has breached any contractual duty owed to him as third-party beneficiary—the duty of each party to the contract to abide by the terms of the contract itself. In other words, Bodine does not allege that RWD has breached the contract. Rather, Bodine alleges that the City, not RWD, breached the contract by charging RWD higher water rates than those set out in the contract.

As a third-party beneficiary, Bodine's rights, if any, are not derived from RWD's rights. As such, Bodine does not need to sue RWD in order to maintain a third-party beneficiary action against the City and enforce the contract. Since Bodine does not claim

RWD breached any terms in the water purchase contract, Bodine cannot sue RWD for breach of contract as third-party beneficiary. The following cases support this conclusion:

In *Wunschel v. Transcontinental Ins. Co.*, 17 Kan. App. 2d 457, 839 P.2d 64 (1992), the plaintiffs, as third-party beneficiaries, properly sued the party who breached the contract directly (the City herein) without naming the other party to the contract at all (RWD). In *Noel v. Pizza Hut, Inc.*, 15 Kan. App. 2d 225, 234-35, 805 P.2d 1244, *rev. denied* 248 Kan. 996 (1991), the court allowed the third-party beneficiary to sue either the promisor or the promisee in a contract, as long as the third-party beneficiary actually sued the party to the contract who was "responsible" for or actually "caused" the breach of the contract. Even assuming all facts in favor of Bodine, the promisee herein, RWD, did not actually "cause" the breach; if a breach occurred, it was caused by the City. Thus, Bodine improperly named RWD as the defendant in this third-party beneficiary/breach of contract lawsuit. The trial court properly granted summary judgment to RWD on this third-party beneficiary claim.

## II. CLASS ACTION CERTIFICATION

The trial court denied Bodine's motion to certify the class on its merits. Bodine has no valid claim. The trial court properly granted summary judgment to RWD on all of Bodine's claims. Since all of Bodine's claims are invalid, his motion to certify a class to bring these claims is moot. The trial court properly denied Bodine's motion to certify a class action.

We have examined Bodine's other points on appeal and find them to be without merit.

The trial court is affirmed.

LOCKETT, J., not participating.

RICHARD W. WAHL, Senior Judge, assigned. ▌