No. 83,227

DAVID MITCHELL and NOLAN O. LUKE, individually, and as representative plaintiffs on behalf of persons or concerns similarly situated, *Appellants*, v. THE CITY OF WICHITA, KANSAS, a municipal corporation, *Appellee*.

(12 P.3d 402)

Opinion filed October 27, 2000.

*Jerry D. Bogle*, of Young, Bogle, McCausland, Wells & Blanchard, P.A., of Wichita, argued the cause and was on the briefs for appellants.

*Douglas J. Moshier*, assistant city attorney, argued the cause, and *Gary E. Rebenstorf*, city attorney, was with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a class action suit brought by plaintiffs David Mitchell and Nolan O. Luke challenging the authority of the defendant City of Wichita, Kansas, (City) to charge users of its water and sewer utility who live outside the city limits a fee for water and sewer service which is 55% higher than the fee charged the users within the city limits. The plaintiffs' challenge is to both the authority of the City to impose such a surcharge and to the reasonableness of the City's 55% surcharge.

The plaintiffs and the City filed motions for summary judgment. The district court granted the City's motion, finding that the surcharge was lawful and reasonable. This appeal followed.

The plaintiffs and the certified class are all current or former residents of the City of Eastborough, Kansas, which receives its water and sewer services from the City. The City of Eastborough is a separate entity from Wichita. Eastborough is geographically contained within the city limits of Wichita; its residents are not residents of Wichita.

In 1957, the City acquired the Wichita Water Company, a privately owned company that had previously provided water services to the city as well as nonresidents surrounding the city. Prior to 1957, the Wichita Water Company charged its residential water customers who lived outside the city limits of Wichita (such as Eastborough) a 100% surcharge. (The City of Wichita sells water to a number of other small towns and rural water districts within Sedgwick County, as did it predecessor, the Wichita Water Company.) After the City's acquisition of the Wichita Water Company in 1957, the City reduced the surcharge for nonresidents to 40%. Sometime between 1974 to 1989, this surcharge was increased from 40% to 55%. The surcharge has remained at 55% since that time.

The City has imposed a surcharge for sewer service provided to all nonresidents of Wichita since 1957. Since 1957, the surcharge has mirrored the nonresident, residential water customers' charge of 55%.

The water pipelines running throughout the geographical area comprising Eastborough are connected at many points to Wichita's water system and are completely integrated with that system.

The nonresident surcharge imposed by the City on water and sewer rates has always been imposed uniformly on Eastborough residents and on all nonresident customers of the City's water and sewer utilities. The City does contract with some rural water districts and cities to sell water at a bulk rate with the water delivered to a certain point. The bulk rate is cheaper than the surcharge.

One of the purposes of the City establishing a surcharge for outside city users is to provide an incentive for people to annex into the corporate limits of the city. At the point that the customer outside the city comes into the city, there is an immediate reduction of cost of water and sewer services. The City also asserts that the loss of ad valorem taxes due to the City's ownership of the waterworks justifies the surcharge.

Other facts pertinent to the appeal will be discussed as necessary in disposing of the issues.

## I. STANDARD OF REVIEW

Our review of a district court's granting of summary judgment in favor of a party was discussed in *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999), where we stated:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]

"An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. The disputed question of fact which is immaterial to the issue does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact. [Citation omitted.]"

## II. 55% SURCHARGE

The plaintiffs argue that there is no statutory authority to support the surcharge in water and sewer rates and that the discriminatory rates are illegal. Concerning the legislative authority for setting rates, the district court concluded that

"the statutory authority for the City to set water rates is generally found at K.S.A. 13-1209, 13-2405, 13-2412, and the other statutes and ordinances set forth in the defendant's brief. The Court finds that there is nothing in these statutes which prohibits the City from establishing different classes of users and applying different rates to such classes."

We agree. There is nothing in any statute which prevents a municipality from charging higher rates to customers outside the city limits. K.S.A. 13-1209 sets forth in pertinent part:

"Any city of the first class in the state of Kansas shall have power and authority to purchase, construct or extend waterworks for the purpose of supplying such city and its inhabitants with water, and may maintain, operate and regulate the same, and prescribe the rates at which water shall be furnished."

K.S.A. 13-2405 sets forth the cost of service elements which may be included by a city when fixing the rates for consumers:

"Said board of commissioners shall fix such rates for water furnished to consumers as will secure an income sufficient to pay all salaries and wages of all officers and employees in such department; to cover all miscellaneous expenses; to pay all interest charges upon all indebtedness of the city created for the purpose of purchasing, improving or extending the waterworks, and to provide a sinking fund of not less than two percent per annum upon such gross indebtedness for the purpose of paying off such indebtedness at maturity; to cover the cost of all repairs, renewals, betterments and extensions of the waterworks and all material used; to cover the depreciation of the plant by use and by improvement in the arts; to repair all losses of the waterworks caused by accident of every kind and to recoup the city for loss of taxes due to city ownership."

K.S.A. 13-2412 discusses discrimination between rates:

"No person, firm, corporation, or association, nor any city department, shall be allowed free use of water, nor shall there be discrimination among water users of like classes as to rates, and rebates in rates shall never be allowed to any person, firm or corporation or city department except as an inducement to prompt payment of water rates."

The City has the statutory authority to set rates for its water and sewer services. There is no statutory impediment to charging a higher rate for those customers who live outside the city limits.

### Discrimination in Surcharge Issue

The scope of judicial review was discussed in *Shawnee Hills Mobile Homes, Inc. v. Rural Water District*, 217 Kan. 421, 537 P.2d 210 (1975), where we stated:

" 'Rate-making is a legislative or administrative, not a judicial, function. A rate fixed by the proper administrative authority, while it may be annulled if in violation of legal rights, is not subject to readjustment or correction by the court as a reviewing or supervisory body. When it is found that the rate is not unlawful, the duty and authority of the court ceases . . . . Discrimination, to be unlawful, must be unjust and unreasonable. It must operate to the unjust advantage of one and consequent oppression or disadvantage of another. . . . However, absolute uniformity is impossible of attainment. . . . Classification, within just and reasonable limits, is proper and permissible. The presumption is in favor of the rate and rule established by the rate-making authority. . . . The language of the Supreme Court of the United States, applied to an attack by the utility company upon an established rate, is conversely applicable to an attack by the ratepayer.' " 217 Kan. at 429-30 (quoting *Knotts v. Nollen*, 206 Iowa 261, 262-63, 218 N.W. 563 [1928]

and referring to *San Diego Land & Town Co. v. National City*, 174 U.S. 739, 43 L. Ed. 1154, 19 S. Ct. 804 [1899]).

In *Durant* v. *City of Beverly Hills*, 39 Cal. App. 2d 133, 102 P.2d 759 (1940), the California appellate court stated:

"The universal rule is that in these circumstances the court is not a rate-fixing body, that the matter of fixing water rates is not judicial, but is legislative in character, and that the limit of its function and jurisdiction is to find, upon a proper showing, that the rates fixed are unreasonable and unfair. [*Citations* omitted.] If upon such finding it is adjudged that the established rates shall not be collected, the court is not permitted to fix another and different rate, but this function must be left with the proper rate-fixing body." 39 Cal. App. 2d at 139-40.

It is generally recognized that water rates set by a municipality are presumed to be valid and reasonable until the contrary has been established. The burden of overcoming this presumption rests upon the party challenging the rates. *Bodine v. Osage County Rural Water Dist. # 7*, 263 Kan. 418, Syl. ¶ 4, 949 P.2d 1104 (1997); *Shawnee Hills Mobile Homes*, 217 Kan. 421, Syl. ¶ 3; *Usher v. City of Pittsburgh*, 196 Kan. 86, 90, 410 P.2d 419 (1966).

A municipal water plant serving customers outside the city limits may make a separate classification of customers outside the city for rate-making purposes. Municipally owned waterworks may charge more for those who reside outside the city limits than those who live within the city limits. See *Jung v. City of Phoenix*, 160 Ariz. 38, 40, 770 P.2d 342 (1989) (noting that a city can "glean a profit" from those who live outside the city limits and that it is the general rule that a city can charge more for water services to those who live out of the city limits); *Barr v. First Taxing District of the City of Norwalk*, 151 Conn. 53, 59, 192 A.2d 872 (1963) (noting that "[i]t has been generally held that a municipally owned waterworks supplying water outside its corporate limits may, generally, charge more for that service than it charges the users who reside within the corporate limits"); *Bleick v. City of Papillion*, 219 Neb. 574, 577, 365 N.W.2d 405 (1985) (noting that the "great majority" of cases have held that public utilities may charge a different rate for those living outside the city limits from those who live inside the city limits); *Town of Terrell Hills v. City of San Antonio*, 318

S.W.2d 85, 87 (Tx. Ct. App. 1958) (noting that it is "well established" that a municipality may charge more for utility rates for those living outside the city limits).

The fact that the rates charged within the city are different than those charged outside the city does not of itself characterize the rates as discriminatory. *Usher*, 196 Kan. at 89. See also *Durant*, 39 Cal. App. 2d at 138 (lack of uniformity in rates for water services is not prima facia evidence of unreasonableness); *Barr v. City Council of Augusta*, 206 Ga. 753, Syl. ¶ 3, 58 S.E.2d 823 (1950) (rates which differ for water services inside the city limits from those outside the city limits do not per se violate the Equal Protection Clause, nor do they deny due process under the federal Constitution); *Kiefer v. City of Idaho Falls*, 49 Idaho 458, 464, 289 Pac. 81 (1930) (difference in rates does not establish "unjustifiable discrimination"); *West Capital Associates Limited Partnership v. City of Annapolis*, 110 Md. App. 443, 452, 677 A.2d 655 (1996) (noting that it is "well established" that municipalities may charge higher rates for those outside the city limits without discriminating); *Atlas Valley Golf and Country Club, Inc. v. Village of Goodrich*, 227 Mich. App. 14, 23, 575 N.W.2d 56 (1997) (mere difference in rates does not make the higher rate unreasonable); *Forest City v. City of Oregon*, 569 S.W.2d 330, 334 (Mo. Ct. App. 1978) (noting that rates are not discriminatory on the sole basis that they differ from those living in the city limits and those living outside the city limits).

Although a municipality may charge higher rates for customers living outside the city limits, rates must still be reasonable, and persons and corporations dependent on the utilities are entitled to judicial protection against rates when they become unreasonable. Rates must be reasonable in the sense that they are not excessive or confiscatory. *Holton Creamery Co. v. Brown*, 137 Kan. 418, 419, 20 P.2d 503 (1933). See also *Barr*, 151 Conn. at 59 (rates to those outside the city limits must be reasonable); *Atlas Valley Golf and Country Club*, 227 Mich. App. at 21 (although city may charge higher rates for those living outside the city limits, the rate must still be reasonable); *American Aniline Products v. Lock Haven*, 288 Pa. 420, 424-25, 135 A. 726 (1927) (municipalities have power to

charge rates in furnishing water to residents and nonresidents as long as the rates are reasonable and are not discriminatory).

In discussing the reasonableness of water rates, this court, in *Shawnee Hills Mobile Homes*, 217 Kan. at 431, stated:

"What is a fair and reasonable rate comprehends more than just enough revenue to get by. Sound fiscal practice would seem to dictate that provision be made for future contingencies and that reasonable reserves be set up to provide for the repair, improvement and replacement of the physical plant and facilities comprising a water distribution system. The rule generally followed is that in the absence of statutory restrictions, a municipal corporation which operates a water system has authority to charge such rates as will yield a fair profit, so long as the rate is not disproportionate to the service rendered."

The district court, in discussing the surcharge for Eastborough residents, stated:

"The Kansas Supreme Court has expressly held that municipal water companies can charge a different rate for customers outside the city. In *Usher v. City of Pittsburgh*, 196 Kan. 86, the Court held that a city operating a municipal water plant and serving customers outside the city limits may make a separate classification of customers [outside the city limits] for rate making purposes. The fact that the rates charged within the city are different than those charged outside the city, does not of itself characterize the rates as discriminatory.

"Although the facts of the *Usher* case are somewhat different from the facts of this case, *Usher* clearly establishes that there is nothing unconstitutional about a municipal water company assessing a different rate to nonresident customers. The fact is, applying a surcharge to nonresident customers is nothing new. It's apparently done throughout the country, as evidenced by the various cases from Kansas and other jurisdictions that were supplied in the briefs. The Wichita Water [Company] always assessed a surcharge to nonresident customers and, in fact, the amount of the surcharge was reduced after the City took over operation in 1957. Probably the most significant factor in this case is that the residents of Eastborough are not being treated differently from any other nonresident customers that the City serves. They are all assessed a surcharge of 55 percent.

". . . If Eastborough residents were treated differently than the other nonresident customers on the fringes of Wichita, this would clearly be discrimination in violation of the statutory scheme. The plaintiffs argue that the 55 percent surcharge is discriminatory because the cost of service to Eastborough is the same as the cost of service to the immediate adjoining area. I'm sure that all the other nonresident customers could make this same argument."

The district court concluded:

"The . . . issue is whether or not the amount of the surcharge is unreasonable. Obviously, the City cannot assess any amount it chooses without fear of judicial review. The amount must still be reasonable in the sense that it is not excessive or confiscatory. The Court notes that in the *Usher v. City of Pittsburgh* case the Supreme Court upheld a 100 percent surcharge to nonresident customers as opposed to the 55 percent surcharge we have in this case. So there's nothing, per se, unreasonable about 55 percent. How the City determines what this assessment should be is a legislative function that the Court can't interfere with, unless the case clearly presents a flagrant attack on the rights of property. In deciding whether the surcharge assessed by the City is appropriate, mathematical exactness is not required; reasonableness is the test. It is a generally recognized rule that water rates set by a municipal corporation are presumed to be valid and reasonable unless the contrary has been established. The burden is on the plaintiffs to show that the rates are not reasonable, and the Court must make this determination based upon the evidence in the record.

". . . Based upon this uncontroverted evidence and the lack of any other evidence in the record, the Court finds that the plaintiffs fail to meet their burden that the amount of the surcharge assessed by the City of Wichita to nonresident customers, including the people of Eastborough, is unreasonable."

The *Usher* case is similar to the one at bar. In *Usher*, the plaintiffs challenged the "reasonableness" of the water rates set by the City of Pittsburg, Kansas. The rate for residential customers living outside the city limits was "practically double" that of residential customers who lived inside the city limits. The trial court dismissed the suit, finding that the plaintiffs had failed to show that the water rates were unreasonable. On appeal, this court affirmed the trial court, holding that the plaintiffs had failed to meet their burden of proof in showing that the rates, although double that charged to those living inside the city limits, were unreasonable.

Like the plaintiffs in *Usher*, the plaintiffs in the present case have also failed to meet their burden in showing that the 55% surcharge is not reasonable. The fact that they pay a higher rate alone does not make the rate unreasonable. The City offered reasons for charging a higher rate. First, the City indicated that it uses the surcharge as a means of encouraging annexation into the city. Second, the City uses the surcharge to make up lost taxes it would have realized had the water plant been privately owned. See K.S.A. 13-2405 (allowing cities to set rates so that they can recoup lost tax dollars if the waterworks is publicly owned). See also *Town of Ter-*

*rell Hills*, 318 S.W.2d at 88 (considering the lost taxes due to public ownership of the water department as a reason for allowing a 30% surcharge for customers living outside the city limits).

Even though the district court found that the surcharge was justifiable in part on the basis of the lost ad valorem taxes, a fact that would not justify placing the entire ad valorem loss on those living outside the city, each of the reasons offered supplies us with a rational basis by which to uphold the surcharge. See *Bodine*, 263 Kan. at 426 (affirming district court which had upheld water rates and holding that plaintiff had failed to show that water rates were unreasonable or that they were "so excessive as to yield a large profit"). See also *Barr*, 151 Conn. at 61-62 (holding that plaintiff had failed to show that rates were unreasonable where city charged twice the rate for those who lived outside the city limits); *West Capital Associates*, 110 Md. App. at 453 (holding that appellant had failed to show that rates were unreasonable even though they were twice that of residential customers who lived within the city limits); *Bleick*, 219 Neb. at 577 (holding that water service rates which were two times greater outside the city limits and sewer service rates which were 1.5 times greater outside the city limits were enforceable); *Town of Terrell Hills*, 318 S.W.2d at 88-89 (upholding rate differential of 30%).

The district court did not error in ruling that the plaintiffs failed to overcome their burden of proof and show that the 55% surcharge on customers outside the city limits was unreasonable.

## III. PRETRIAL ORDER

Although the plaintiffs' counsel asked the City's expert several times why the City applied a 55% surcharge on water and sewer services to customers living outside the city limits, the expert never used the "ad valorem" tax issue as a justification. When filing its motion for summary judgment, the City attached affidavits explaining that when the City bought the Wichita Water Company in 1957, it lost the ability to tax the private entity and that the 55% surcharge on customers outside the city limits was a way to recoup some of the lost taxes. The City claims that for the year 1997, it

lost over $4.1 million dollars in ad valorem taxes, but that it gen-
erated $3.3 million dollars from the 55% surcharge.

The plaintiffs argue that the district court should not have con-
sidered the "ad valorem" tax issue when making its decision be-
cause the issue was never preserved in the pretrial order.

The pretrial order framed the issue of the case as to whether
the City violated K.S.A. 13-2405 in applying a 55% surcharge to
Eastborough residents because they lived outside the city limits.
K.S.A. 13-2405 specifically notes that one reason a city may charge
higher rates for water is to recoup lost taxes.

The district court properly considered the "ad valorem" tax issue
when deciding the summary judgment motions filed by both par-
ties. Furthermore, the incentive to annex into the city provides a
reasonable basis to affirm the district court's granting of summary
judgment for the City.

## IV. AMENDING THE PRETRIAL ORDER

The plaintiffs argue that the district court should not have
"amended" the pretrial order by considering the "ad valorem" tax
issue.

The trial court is given broad discretion to permit or refuse to
permit amendment of the pretrial order. *Tillotson v. Abbott*, 205
Kan. 706, 709, 472 P.2d 240 (1970).

The trial court found that the issue had been referred to in the
briefs and that the matter was framed in reference to K.S.A. 13-
2405. There is no error on this issue.

## V. MOTION FOR NEW TRIAL AND TO ALTER
## OR AMEND JUDGMENT

The plaintiffs argue that the district court erred when it denied
their motion for a new trial and their motion to alter or amend the
judgment.

The decision to grant or deny a new trial rests in the sound
discretion of the trial court and that decision will not be disturbed
on appeal unless there is a clear abuse of discretion. *Noel v. Pizza
Management*, 258 Kan. 3, 15, 899 P.2d 1013 (1995). The decision

to grant or deny a motion to alter or amend the judgment is similarly one within the sound discretion of the trial court.

The plaintiffs' argument on this point centers on the district court's use of the "ad valorem" tax issue as a rational basis for allowing the 55% surcharge. Because we hold that the "ad valorem" issue was preserved in the pretrial order and because the "ad valorem" tax loss is not the only rational basis by which the City can justify its 55% surcharge, this issue is moot.

## VI. STATUTE OF LIMITATIONS

By reason of our holdings above, this issue is moot.

Affirmed.